### JARVIS–CONKLIN MORTGAGE TRUST CO. v. WILLHOIT.

(Circuit Court, E. D. Tennessee. February 27, 1897.)

**1. MORTGAGES—DEFENSES—BONA FIDE PURCHASERS.**

That the notary who took the acknowledgment of a mortgage was disqualified by reason of interest cannot be set up in defense to the mortgage in the hands of a bona fide purchaser of the notes secured, where there was nothing on the face of the instrument, or known to him collaterally, to give notice of such infirmity.

**2. FOREIGN CORPORATIONS—STATE REGULATION—VALIDITY OF CONTRACT.**

Laws Tenn. 1891, c. 122, regulating the doing of business by foreign corporations, prohibiting them from doing business in the state until they have complied with the conditions imposed, and providing that a violation of the act shall be punishable by a fine not exceeding $500, does not render invalid as between the parties a contract made in the state by a corporation of another state which has not complied with the statute.

This is a suit for the foreclosure of a mortgage by the Jarvis-Conklin Mortgage Trust Company against Willhoit.

Brown & Spurlock, for complainant.
W. G. H. Thomas and W. T. Murray, for defendant.

SEVERENS, District Judge. The defenses to the mortgages (several cases having been heard, and the questions being substantially the same in all of them) are threefold. The first is presented upon this situation of the facts: The acknowledgment of the mortgages in question was taken by one who had some agency in the soliciting or procuring of the loans covered by the mortgages. He seems to have been an intermediary between the borrower and the lender, and he, as notary, took the acknowledgment in, I believe, all of these cases. It is contended on the part of those who here resist the mortgages that an acknowledgment so taken is void. It is contended that he was not in such a situation of indifference as that he was competent to take the acknowledgment. These mortgages were given to secure notes which have passed into the hands (in every instance) of bona fide holders for value, and without notice of the infirmity (if it be such) in the mortgage, arising from the fact of a person, who was incompetent to take the acknowledgment, having taken it. Now, my opinion on that branch of the case is, very clearly, that, inasmuch as there was nothing upon the face of the mortgage to indicate to anybody that there was incapacity in the notary to take this acknowledgment, and the note secured by the mortgage having passed into the hands of bona fide holders, this objection to the validity of the instrument cannot be taken for any purpose by those who executed the instrument. To hold otherwise would, in my opinion, establish a facility for the grossest frauds, and, besides, would leave the consequences of there being a possible question of the competency of the officer taking the acknowledgment open to attack, and the validity of the title of vendees and mortgagees be exposed for all time (unless it be barred by the statute of limitations) to collateral attacks. I think it would be a doctrine that would be extremely injurious to the public; that would unsettle titles, and make them insecure, and the subject of distrust; and, without making any holding upon this subject other than that which the present situation requires, namely, that bona fide holders of paper secured by a mortgage fair upon its face, and duly recorded, there being nothing whatever, either upon the face of the instrument, or known collaterally, which should impair the validity of the instrument, must be protected, I hold that this defense cannot be sustained.

With respect to the defense of usury, I have already definitely expressed my opinion. It is contended that the notes secured by the mortgages (while they are drawn and purport to bear interest at the rate of 6 per cent.) in a certain contingency would draw interest at the rate of 12 per cent. This construction is reached by what seems to the court a rather technical interpretation of the provisions of the notes, which, taken together, under the general rule of construction that all parts of an instrument are to be brought into view when construing any part, clearly show that no such intention was present to the minds of the parties to the instrument; and I am clearly of the opinion that the taking of 12 per cent., under any cir-

cumstances or any condition, was not thought of by the parties to the instrument, and, if the court is able to say that on an examination of the instrument, it is able to say that that is the proper construction of it, upon the presumption that the parties intended a valid contract.

Another question, and the most serious one, is the objection raised to these mortgages on the ground that they are transactions between a nonresident corporation (of the state of Missouri in this instance) and local borrowers of money in Tennessee. The nonresident corporation had never complied with the provisions of the act found in chapter 122 of the Acts of Tennessee for 1891, which provides that every nonresident corporation shall first become registered in this state before it shall be authorized to do business; and the act then affirmatively provides, in the next section, that the corporation shall not do business in the state until these conditions have been complied with. I state the gist of the matter, without professing to state the exact terms of the statute. The statute then goes on to prescribe that any one violating the provisions of that act shall be punished by a fine of not less than $100 nor more than $500. It is contended by counsel for the defendants that these provisions, if they do not contain an express prohibition of such a transaction as this, nevertheless do, by clear and necessary implication, declare that such a transaction may not lawfully take place, and that the instrument is rendered invalid by the effect of such express or implied prohibition. This general rule, which is thus contended for, is undoubtedly an accepted doctrine, namely, that where a statute expressly or by necessary implication prohibits an act to be done or a contract to be made, the thing done, the contract made, or professed to be made, is invalid, is null. But there are exceptions to that doctrine, and they have been enforced in the supreme court of the United States in a number of cases, and it is clear that not all such cases as might otherwise come within the comprehension of the general rule are within its operation and effect. The case which was referred to—Harris v. Runnels, 12 How. 79—arose in an action which involved a suit for the recovery of the purchase price of slaves which had been introduced into the state of Mississippi, and there sold, in the face of an express statute forbidding any such transactions, and imposing a penalty upon those who should engage in them. It was held, nevertheless, by the supreme court, upon an examination of that statute, and with particular reference to one feature of the statute which exists here, and has also existed in several cases which have been decided by the supreme court of the United States since, namely, that the act limited the penalty which could be enforced upon its violation. That was the case in the Mississippi act which prohibited the introduction and sale of slaves. That is the condition of the act that is appealed to in the present case. The penalty is limited to the sum of $500,—the utmost. Now, it was said in that case—the case of Harris v. Runnels—that that was a matter to be taken into consideration in determining the intended effect by the legislature of the act; that is to say, whether it was intended to forbid the act, and punish its violation by a fine, and that simply, or whether it was intended to go

further than that, and utterly invalidate the contract. It was pointed out there—it may be pointed out here—that these mortgages (for instance, the one in the Ruohs Case, 84 Fed. 513) are 20 times the amount of the utmost fine that could be imposed under this Tennessee statute. The result of holding the instrument invalid would be thus not only to leave the parties subject to prosecution for the collection of the fine, but it also involves the imposition of a penalty of 20 times that prescribed by the statute, and that by a court of equity, one of whose maxims is to avoid such things—to avoid forfeitures. In the case of Harris v. Runnels—a leading case upon this subject—it was held that the party was entitled to recover the price for which the slaves were sold, and that the statute went no further than to provide for the punishment of any one who violated its provisions. That case has been followed in several instances by the supreme court, one of which is the case of Fritts v. Palmer, reported in 132 U. S. 282, 10 Sup. Ct. 93. There are other cases which have involved the same question,—one in 153 U. S. 318, 14 Sup. Ct. 852 (McBroom v. Investment Co.). In the case of Railroad Co. v. Evans, 14 C. C. A. 116, 66 Fed. 809, which went up from this locality, Judge Lurton delivered the opinion, which is in line with these decisions of the supreme court to which I have referred, and the pivot—the main pivot—on which that case turned was the decision of the court upon this very question. The court referred to the case of Fritts v. Palmer at great length. In the case of Fritts v. Palmer, the question arose under the constitution of Colorado. The statutes of that state forbade foreign corporations from doing business in the state until they had complied with certain conditions precedent. Nevertheless, a foreign corporation did become the grantee of a tract of land within the state. The vendor afterwards transferred, by quitclaim deed to another party. such title as he had, and the question arose between the persons claiming under the quitclaim deed and the corporation, which had been the first grantee, the corporation not having taken any step whatever towards complying with the conditions by which it was allowed to do business in the state. The supreme court held that clearly, as between the parties to the conveyance, the instrument was valid, and conveyed the title; that the state alone was competent to make any complaint of the infringement by the corporation of that statute; that it was a question in which the state at large was interested; that the statute had been passed at the instance or for the benefit of no particular individual or individuals, but was passed in the interest of the state, and, that being so, the state was the only competent party to prevent the corporation from transacting business, in violation of that statute, in the state. There are other cases which illustrate this doctrine, reported in the decisions of the supreme court. For instance, there is a class of cases that has grown up from the taking by national banks of real-estate securities, and then becoming the purchasers of the land, or of taking out and out deeds in payment in satisfaction of their debts, in direct contravention of the acts of congress providing for the creation of national banks, that the banks should be incompetent to do that, that it should be unlawful. It was in express terms forbidden, yet, some

of the national banks having done so, it was held that it did not invalidate the transaction as between the parties, although the United States might be in a position to object to such transactions, and to take such a course as it deemed proper in vindication of the statute. There are quite a number of these cases, taken altogether, which bear directly upon this subject. Now, if there were any express decision of the supreme court of Tennessee bearing upon such a question as I have before me, I should feel concluded by that decision in the interpretation of the act. Certainly I should if that interpretation had been put upon it before the creation of these obligations. How it would be if a subsequent interpretation had been put upon it which seemed to be practically an impairment of the obligation of the contract, it is not necessary to determine. I have no occasion to deal with that at present. But there is no express decision of the supreme court which is in conflict with the views which have been taken by the supreme court of the United States and by the circuit court of appeals for this circuit on this question, and I have no doubt but that this court ought to regard itself as bound to hold that this statute does not, in its application to the present case, invalidate the mortgage or mortgages; that, as between the parties, the transaction was effectual. For these reasons, I shall overrule the several objections which have been taken to the validity of this mortgage, and pronounce a decree in favor of the complainants.