T. COVINGTON v. S. H. THREADGILL, Adm'r.

*Contract—Illegal Consideration—Selling Liquor on credit.*

1· A contract made in violation of a penal statute is deemed to be illegal, and will not be enforced by the courts. Where such a contract furnishes a consideration of another promise, the latter will also be deemed illegal, even though it may be partially supported by other and legal considerations..

2. The penalty denounced by Bat. Rev., ch. 81, § 4, against one who sells liquor, on credit, in violation of the statute, is not limited to a forfeiture of the excess over the sum of ten dollars, but extends to the whole amount of "money credited."

(*Sharp* v. *Farmer*, 4 Dev. & Bat., 122; *Ramsay* v. *Woodard*, 3 Jones, 508; *Melvin* v. *Easley*, 7 Jones, 356; *Clemmons* v. *Hampton*, 64 N. C., 264, cited and approved).

CIVIL ACTION tried at Fall Term, 1881, of ANSON Superior Court, before *Graves, J.*

The plaintiff declares upon three notes, given him by the defendant's intestate, and also upon an open account.

The first note, dated in September, 1877, is for $49.95; the second, in November, 1877, for $40; and the third, in May, 1878, for $25. The account is a running one, commencing in May, 1878, and closing in September of that year, and is for $43.45.

The evidence was that the plaintiff was a licensed retailer of spirituous liquors in the town of Wadesboro, keeping also for sale cigars, tobacco, confectioneries, bacon and other groceries. The defendant's intestate was in the daily habit of buying spirituous liquors from him by the small measure, and drinking it in the shop, and often drunk to intoxication. At such times the plaintiff's custom was to charge the drinks as they were sold, upon strips of paper, which he would present to the intestate as soon as sober, and take his note therefor. Intestate would buy other articles which were charged in the same way, and also incor-

porated in the notes. The notes sued on were taken in this way, the greater part of each being for liquors sold, though exactly what part was for liquor and what for other things the witness (plaintiff) could not tell. They were not witnessed or taken in the presence of a witness. The open account was exclusively for liquors, the most of which was sold by retail.

The defendant requested the court to instruct the jury, that inasmuch as the notes sued on were given for liquors sold to his intestate by retail, and on a credit for a greater amount than ten dollars, the plaintiff, being a licensed retailer at the time, could not recover any part thereof, notwithstanding they were partly given for other articles, the sale of which was not prohibited. This instruction the court declined to give, but told the jury that if the notes were given in settlement of accounts made up partly of liquors sold, and partly of unprohibited articles, they should ascertain how much was given for liquors and how much for other articles, and as to the latter they should render their verdict for the plaintiff; and further, in case they should believe that the consideration of the notes consisted of liquors sold to the intestate, on a credit to a greater amount than ten dollars, that then they might return a verdict for the plaintiff, on account of the liquors thus sold, to the said amount of ten dollars.

The verdict was in conformity with the instructions given, and after judgment thereon, the defendant appealed.

*Messrs. Hinsdale & Devereux*, for plaintiff.
*Messrs. J. A. Lockhart* and *Burwell & Walker*, for defendant.

RUFFIN, J. The defence rests upon the act of 1798 (Bat. Rev., ch. 81, § 4), which declares that "no retailer of liquors by the small measure shall sell to any person, on credit, liquors to a greater amount than ten dollars, unless the person credited sign a book or note in the presence of a witness in acknowledgment of the debt, under the penalty of losing the money so credited,

and that in any action brought for the recovery of such debt, the matter of defence allowed by this section may be set up in the answer and given in evidence."

The policy of the statute need not be commented on. It is such as has commended itself to the law-making, power of the state, and the courts are in duty bound therefore to give effect to it, and it is not expected that any case will occur which will better serve to illustrate the wisdom of that policy and the necessity for its enforcement, than does this one between these parties.

The effect of the statute was not correctly apprehended by His Honor. The penalty which it denounces against one, who violates its provisions, is not limited to a forfeiture of the excess over and above the sum of ten dollars, but extends to the whole "*money credited,*" as well that below, as above, that sum. Such seems to us to be the plain import of the words used in the act, without in any degree straining or detracting from their natural meaning.

The plaintiff, however, insists, and His Honor evidently inclined to that opinion, that inasmuch as the statute does not in positive terms declare the act of selling, though upon a credit and in excess of the designated amount, to be *unlawful*, but simply prescribes a penalty for it, its effect is not to make the selling so absolutely illegal, as that it will vitiate the whole of the note, or other contract, of which it may form, in part, the consideration. A distinction, like that attempted to be made, between the effect in this regard of statutes which affirmatively declare acts done in contravention of their provisions, to be *unlawful*, and those which merely visit such acts with penalties, has been at times, and perhaps still is, recognized in some of the authorities, but never in the courts of this state.

In *Sharp* v. *Farmer*, 4 Dev. & Bat., 122, the very point was made, and the court say, that after considering a vast number of cases upon the subject, they deem the law perfectly settled, that no action will be sustained in enforcement of an executory con-

tract founded upon an immoral consideration, or one against the policy of the law, the due course of justice, or the prohibition of a penal statute, and that a distinction between acts *malum in se* and *malum prohibitum*, could no longer be admitted as sound in principle, for that, the law would be false to itself, if it allowed a party through its tribunals to enforce a contract made against the express provisions of a statute; and accordingly in that case, it was held that no action could be sustained upon a promise to settle the estate of an intestate without taking out letters of administration—there being a statute which declared that no person shall enter upon the administration of any deceased person's estate until he has procured letters of administration, *under the penalty of one hundred dollars*, one-half to the informer and the other half to the state. A similar decision was made, with reference to a contract made in violation of the provisions of the same statute, in *Ramsay* v. *Woodard*, 3 Jones, 508; and in *Melvin* v. *Easley*, 7 Jones, 356, it was conceded by the whole court, though they differed as to other points, that a contract made on Sunday was *illegal*, and could not support an action, upon the ground that the act of 1741 (Bat. Rev., ch. 115, § 1) declared that " no person shall on Sunday exercise the work of his ordinary calling, upon pain that he should forfeit and pay one dollar, and it was expressly said that no distinction could be admitted between contracts made in contravention of the policy of the law, whether *malum in se* or *malum prohibitum*.

With these precedents to govern us, emanating from our own court and so manifestly in point, we cannot hesitate to declare our opinion that the sale of liquors made by the plaintiff to the defendant's intestate was illegal, because done contrary to the declared policy of the law, and in direct violation of its express provision. Being thus illegal, so that no action in affirmance of it can be sustained by the courts, it taints and violates any contract into which it enters, or forms any part of the consideration. No principle is now better settled than this: That if a single contract be made on several considerations, any one of which is

illegal, then the whole promise is void, because every part thereof is induced and therefore affected by the illegal consideration. *Clemmons* v. *Hampton,* 64 N. C., 264. 1 Smith's L. C., 502. And this consequence would seem to follow in this case, whether we treat the statute as annulling the whole contract for the sale of liquors, or only so much of it as was in excess of the ten dollars; for in either case, there would still be an illegal consideration entering into and relied upon to support each and every one of the promises sued on.

The court, therefore, thinks there is error in the judgment, and the same is reversed and a *venire de novo* awarded to the defendant.

Error.                                           *Venire de novo.*