THE SECURITY LIFE AND ANNUITY COMPANY v. GEORGE H. COSTNER.

(Filed 2 December, 1908).

**1. Insurance—Contracts, Valid and Invalid—Severable.**

A valid contract or policy of life insurance is severable from an invalid collateral agreement made at one and the same time, respecting a benefit prohibited by statute.

**2. Same—When Enforcible.**

When two contracts are made at one and the same time respecting a contract or policy of life insurance, one valid and the other invalid, the valid contract is enforcible if severable from the invalid one.

**3. Same—Rebates.**

A contract or policy of life insurance regularly issued and valid, is not affected by a collateral agreement that the company would deduct certain amounts by way of renewal commissions as credits on the premium; and a defense to the payment of a note given for the premiums is untenable, that the policy and note are void for reason that the special benefits or rebates were given to certain persons, and not all, of the "same class and expectation of life." Revisal, sec. 4775. Whether the collateral agreement in this case is violative of the statute, *quaere*.

**4. Same—Consideration—Advantages Received.**

When the insured has given his note for the premiums on his life insurance policy, and has received for one year, in this manner, the benefits of the insurance, he cannot avoid paying his note upon the ground of his having collaterally contracted with the company for deduction of certain amounts by way of renewal commissions in violation of the provisions of Revisal, 4775.

ACTION tried before *Moore, J.,* and a jury, April Term, 1908, of LINCOLN.

Defendant executed his promissory note for $144.10 payable to A. E. Scarborough, being the amount of premium on three policies of insurance aggregating $5,000, issued by plaintiff company on the life of defendant. The note was transferred to plaintiff, before maturity, by Scarborough, who was its agent for the purpose of soliciting insurance policies. Defendant admitted the execution of the note and alleged,

by way of defence, that, at the time the policies were issued, and as an inducement to him to take them, plaintiff executed and delivered to him a contract in the following words: "The Security Life and Annuity Company, in consideration of his influence and good will in promoting and maintaining its business in the State of North Carolina, through its author-ized agents, and by recommending to them suitable persons for insurance, and aiding them to secure at least two applica-tions, on which $5,000 contracts are issued by this Company, employs George Henry Costner, of Lincolnton, N. C., as one of not exceeding 600 persons, who shall receive as compensa-tion for such services, a renewal commission according to the following terms and conditions, to-wit:

Said Company agrees, at the end of each calendar year, it will credit the said George Henry Costner, with his pro rata share of a special renewal commission fund (to be created from the expense element of its premiums) according to the number of the said 600 persons whose contracts remain in force, said special renewal commission fund to be made up of $........ set aside annually for such purpose, for every contract in force, written in the State of North Carolina, for ten years from 1 September, 1901, on which there has been paid during the preceding twelve months one annual, two semi-annual or four quarter-annual premiums, and so long as such premiums are paid.

On every anniversary of the date of this contract, after the second, the amount so credited as above to be deducted from the annual premium on said George Henry Costner's policy, and any excess to be paid said George Henry Costner in cash, said compensation being for no other consideration than as mentioned above. In the event of lapse of the $5,000 contract on his own life, or failure to perform the services herein defined, this contract shall terminate."

This contract was signed by plaintiff's president and deliv-ered with the policy by Scarborough. Defendant testified

that he was induced to take the insurance by reason of the execution of the contract. That he ascertained, in a short time thereafter, that the contract was illegal. He retained the policies and refused to pay the note—has never paid any premiums on them. He contended that the contract was violative of the provisions of sec. 4775 of the Revisal and invalidated the note given by him. He requested his Honor to so instruct the jury, which was declined, and defendant excepted. The jury found that the contract was executed and delivered at the same time that the policies issued, and, under instructions of the Court, found that defendant was indebted to plaintiff, etc. Judgment and appeal.

*A. L. Quickell* for plaintiff.
*C. E. Childs* for defendant.

CONNOR, J., after stating the facts: The sole question presented is, whether by reason of the provisions of sec. 4775, Revisal, forbidding insurance companies from giving any special benefits, or any rebate of premiums on policies to one person not given to all others of the "same class and expectation of life," the entire contract, policy and note are void. Conceding that the contract, set out in the record, violates the provisions of the statute, it does not follow that the policy of insurance issued, or the note given for premiums are void. It is not always easy to distinguish between those cases in which the illegal element enters into and so permeates the entire contract as to render it void, and those in which two covenants or obligations are assumed which are either severable, or which the parties have so severed that the valid may be separated from the invalid, and enforced. Pollock thus states the law: "A lawful promise, made for a lawful consideration, is not invalid by reason only of an unlawful promise being made at the same time and for the same consideration." Again: "Where a transaction, partly valid and partly not, is deliberately separated by the parties into

two agreements, one expressing the valid and the other the invalid part, then a party who is called upon to perform his part of that agreement which is, on the face of it, invalid, cannot be heard to say that the transaction, as a whole, is unlawful and void." Contracts, 482 and 483. In *Price v. Green,* 16 M. & W. (Exch.) 346, the defendant, for one consideration, covenanted not to engage in trade in the cities of London and Westminster, or within 600 miles of either of said cities. The action was for breach of the first covenant. *Patterson, J.* held that the two were divisible, and sustained the action for breach of the valid covenant, saying, "No doubt the covenant formed the consideration for the payment of 1,500 pounds, and possibly Gosnell would not have given so large a sum, unless the prohibition to trade had been as extensive as, by the whole of the covenant, it is made to be; but this is conjecture only . . . . . . . . It should be observed that the restriction as to 600 miles from London and Westminster is only void and not illegal." In the same case, reported in 13 M. & W., 695, *Pollock, C. B.,* said: "It is not like a contract to do an illegal act; it is merely a covenant which the law will not enforce; but the party may perform it if he choose."

In *Fishnell v. Gray,* 60 N. J. L. 5, *Beasley, C. J.,* said: "The proposition posited is, that as this part of the consideration of defendant's promise is illegal, the entire contract falls and that no part of it can be enforced." After discussing the question, he says: "As a consideration it was, in the earlier cases, treated as devoid of legal force, but it was deemed to vitiate all other considerations with which it was blended. On this theory an agreement to abstain generally from carrying on a certain business, as in the present case, was treated as though it were an agreement to commit a crime, and, as a consequence, it illegalized everything that it touched. But this view, it has since been perceived, is unnecessarily

stringent and is, in fact, quite unreasonable. There is nothing immoral or criminal in a stipulation not to engage in a certain business. A man may bind himself to such an abstention without incurring any legal penalty. The only effect is that such an engagement cannot be enforced, either at law or in equity. And this is the aspect in which it is regarded by modern authorities." The same view is stated by Page in his recent work on Contracts, 1 vol., section 509. "If A. makes a promise to B., consisting of two, or more, covenants, upon a valuable and legal consideration, and one of the covenants made by A. is illegal, and the other is legal, the question of whether the legal covenant can be enforced or not, depends on whether the contract is severable or not. If the contract is severable, consisting in legal effect of distinct contracts, the legal covenant can be enforced." For this statement of the law, the author cites a large number of decided cases.

The distinction is sometimes made between contracts *malum in se* and *malum prohibitum,* but this is not recognized with us. When the statute prohibiting a contract declares it to be void, as in the statute against gambling in "futures", no enforceable promise or obligation can grow out of it. *Burns v. Tomlinson,* 147 N. C., 645. The statute, sec. 4775, does not declare that contracts, made in violation of its provisions, shall be void. There is nothing immoral in the contract made by plaintiff with defendant, and it is not clear that it comes within the statutory prohibition. *Muller v. Ins. Co.,* 60 N. E. Rep., 958. It seems that, for what the company regarded a valuable consideration, it proposed to give to a class of 600 of its policy-holders certain benefits. However this may be, it is manifest that the note was executed for the exact amount of the regular premiums charged all persons of defendant's age for that kind of policy. It would hardly be contended that the policy was void and that, if defendant had died within the year, the company would not

have been compelled to pay it.    The company, in considera-
tion of the payment of the premium or the execution of the
note, made two separate and distinct contracts with defendant,
assuming entirely different obligations.    One was that, upon
the payment of the premiums named in the policy, at stated
annual periods during his life, it would, upon his death, pay
to the beneficiary named, the amount of the policy.    This
was a valid, binding contract.    At the same time, the com-
pany made a separate contract with defendant that, upon the
payment of the second annual premium and the one due each
year thereafter, it would deduct certain amounts by way of
renewal commissions, which should be credited on said pre-
miums.    Assuming, for the purpose of this decision, that
this contract is void, that is, not enforceable by reason of sec.
4775, Revisal, we are unable to perceive how it can affect the
validity of the contract of insurance or the promise to pay the
premium.    It would be a strange result if a statute, passed
to prohibit rebates or commissions being paid to the insured,
should invalidate the policies issued to persons who pay the
premiums, or invalidate notes given for them.

Defendant says that he learned, in a few days after the
policy was issued, that the contract was void, but that he
retained it in his safe until the next premium fell due, when
he let it lapse.    He was certainly insured for one year, and
this was a valid and valuable consideration to support his
promise to pay the premiums.    *Roddey v. Talbott,* 115 N. C.,
293.    To hold that, upon his own evidence, he may, in
the light of the facts in this case, take the consideration and
then repudiate his promise to pay, would subject the Court
to the charge of violating "the dictates of justice."    In
*Lindsay v. Smith,* 78 N. C., 328, the contract was to sup-
press a criminal prosecution and to ditch plaintiff's land, with
an express provision that it was not to be of any "binding
force" until the prosecution was dismissed.    For manifest
reasons the Court held that the plaintiff could not recover.

In *Covington v. Threadgill,* 88 N. C., 186, notes were given for the payment of liquor, sold in violation of a statute, which imposed a penalty.  While these and other decisions of this Court may be distinguished from this case, it must be conceded that language is used indicating a failure to note the distinction made by more recent decisions.  In all of the cases in our reports, the contract was made in violation of a penal statute.  In this appeal it will be observed that no commission was to be credited to defendant until after the second premium was paid.  He has never paid it, and the company has never come under obligation to him on this contract.  We do not attach any importance to the fact that the note was payable to Scarborough and transferred to plaintiff.  He was the agent of the company, and it was bound by his acts.  There is

No error.

HOKE, J., did not sit.