## WOOLWINE *v.* MASON *et al.**

### (*Jackson.* April Term, 1913.)

1. **INSURANCE.   Fire Insurance.   Contracts by foreign insurance companies.   Validity.**

   Under Shannon's Code, secs. 3274-3369, making it unlawful for any insurance company to make a contract of insurance, except as authorized by law, and prescribing the terms on which foreign insurance companies may be authorized to do business in the state, and making any person soliciting insurance on behalf of a foreign insurance company not complying with the law guilty of a misdemeanor, and authorizing licensed insurance brokers to place insurance with foreign companies, a contract of insurance made by a foreign insurance company not authorized to do business in the state, through an agent not an insurance broker, is unlawful.   (*Post, pp.* 39-41.)

   Code construed:   Secs. 3275, 3292, 3314, 3315, 3325-3341 (S.).

2. **INSURANCE.   Fire insurance.   Unlawful contracts.   Liability of agent.**

   Under Shannon's Code, sec. 3316, making an agent personally liable on all contracts of insurance unlawfully made by him in behalf of any insurance company not authorized to do business in the State, an agent not a licensed insurance broker, who procures through another agent in a sister State insurance contracts from foreign insurance companies not authorized to do business in the State, is liable to the amount of the policies so obtained, though insured knew of the violation of the law.  (*Post, pp.* 42, 43.)

   Cases cited and approved:   Burgess v. Jackson, 18 App. Div., 296; Latham v. Harrod, 71 Kan., 565; Hartman v. Hollowell, 126

---

*As to the effect of insurance where the statutes regulating the business of foreign insurance companies have not been complied with, see note in 20 L. R. A., 405.  And for the question of restrictions on business of foreign insurance companies, see note in 24 L. R. A., 298.

Iowa, 643; Noble v. Mitchell, 100 Ala., 530; Price v. Garven, 69 S. W., 986.

Code construed:   Secs. 3316, 3314, 3315.

---

### FROM SHELBY.

---

Appeal from Chancery Court, Shelby County.— FRANCIS FENTRESS, Chancellor.

G. J. MCSPADDEN, for appellant.

HENRY CRAFT, for appellees.

Mr. Justice GREEN delivered the opinion of the Court.

The property of complainant was destroyed by fire on February 8, 1911.  He had $12,500 of insurance thereon.  Of this amount $5,000 was paid to him.  He brought this suit against the defendants, an insurance firm in Memphis with whom he had placed his insurance, to recover $11,500.  Complainant alleged in his bill that by contract with him said firm had undertaken to keep his property insured for $16,500, and had in fact only insured it for $12,500.  He therefore sued for $4,000 for breach of this alleged contract, and for $7,500 of insurance actually written for him by defendants, but not paid to him for certain reasons that will hereafter appear.

The defendants answered complainant's bill, denying all its material averments, and upon the hearing

Woolwine v. Mason.

said bill was dismissed by the chancellor, and from this decree complainant has appealed.

From the proof in this case, which we have orally discussed, we find that complainant has failed to establish the existence of any contract between him and defendants, whereby the latter undertook to keep his property insured for any specified amount.

The decree of the chancellor was therefore correct in so far as it exonerated defendants from liability for the difference between the amount of insurance written on the property and the amount which it was alleged they had contracted to procure.

The disposition of the other questions arising in the case renders it necessary to make a somewhat more detailed statement of the facts.

The complainant, Woolwine, owned and operated a paper box factory in the city of Memphis of the value of about $30,000, including plant and stock. It appears that concerns of this character are regarded as undesirable risks by insurance companies, owing to the inflammable nature of the material necessary to the conduct of such business.

It is obvious from the proof that the complainant had much difficulty in keeping these premises insured to the extent that he desired. One insurance agent with whom he had formerly done business had declined to further handle complainant's insurance. About four years before the destruction of this property, complainant, Woolwine, began doing business with defendants.

We think the weight of the proof is to the effect that Woolwine was advised at the beginning of his relations with defendants, and throughout the existence of those relations, that it was impossible for defendants to place this insurance for him with companies admitted to do business in the State of Tennessee.

The defendants represented three fire insurance companies duly admitted to this State. They were able to place about $3,000 of insurance for complainant in these companies, but policies for the remainder were obtained from companies that had not complied with our laws.

The defendants had some connection or acquaintance with a firm of insurance agents or brokers in Chicago, Shipman & Wayne, and through this Chicago firm they secured policies from various English and American companies on complainant's property.

The negotiations with the Chicago brokers were conducted by defendants. The policies of insurance were sent to defendants, delivered by them to complainant, and the premiums collected by defendants. Of these premiums, defendants retained one-third of the agent's commissions for their compensation.

When the fire occurred, proofs of the loss were prepared by complainant with the assistance of defendants, and these proofs were forwarded through defendants to the Chicago brokers and the several companies.

Some of these foreign companies paid, but several of them, with policies aggregating $7,500, refused to pay, for the reason, as alleged by them, that complain-

ant had failed to comply with a certain promissory warranty contained in the various policies.

It is insisted by complainant that the defendants are personally liable to him for the amount of these unpaid policies, under the provisions of chapter 160 of the Acts of 1895, which we will now consider.

The Act in question, known as the "Tennessee Insurance Act," was passed to regulate the business of insurance other than life and casualty insurance upon the assessment plan, and is carried into Shannon's Code at sections 3274-3369.

Referring to the act by sections as it appears in Shannon's Code, section 3275, after defining a contract of insurance, enacts that "it shall be unlawful for any company to make any contract of insurance upon or concerning any property or interests or lives in this State, or with any resident thereof, or for any person, as insurance agent or insurance broker, to make, negotiate, solicit, or in any manner aid in the transaction of such insurance, unless and except as authorized under the provisions of this article."

Section 3292 prescribes the terms upon which insurance companies organized under the laws of any other State or government shall be admitted and authorized to do business or write contracts of insurance in this State.

It is conceded, as stated above, that none of the companies writing the $7,500 of insurance in controversy have complied with the provisions of section 3292.

Sections 3314 and 3315 are as follows:

"Any person who solicits insurance on behalf of any insurance company not organized under or incorporated by the laws of this State until such company has fully complied with all the requirements of this article, and until such company has received from the insurance commissioner the certificate of authority to transact the business of insurance in this State, or who takes or transmits, other than for himself, any application for insurance, or any policy for insurance to or from such company, or who advertises or otherwise gives notice that he will receive or transmit the same, or who shall receive or deliver a policy of insurance of any such company, or who shall examine or inspect a risk, or receive, collect, or transmit any premium or insurance, or make or form any diagram of any building or buildings, or do or perform any other act or thing in the making with or for any insurances, or consummating of any contract of insurance companies, other than for himself, or who shall examine into or adjust, or aid in adjusting, any loss for or on behalf of any such insurance company, whether any such acts shall be done at the request or instance or by the employment of such insurance company, or of or by any broker or other person, shall be held guilty of a misdemeanor, and, upon conviction by a court having jurisdiction, shall be fined not less than one hundred dollars nor more than two hundred dollars, or shall be imprisoned in the county jail not more than thirty days, or both, in the discretion of the court; but nothing contained in this section shall be applicable to parties

placing insurance in accordance with the provisions of this article authorizing insurance brokers to place insurance in foreign companies.''

Section 3315:

''It shall not be lawful for any person or persons to act as agent or solicit risks, or in any way, directly or indirectly, to transact the business of insurance for and in behalf of any company, whether organized under and incorporated by the laws of this State or not, without obtaining a certificate of authority from the insurance commissioner of the State so to do, which certificate shall state that said company has fully complied with all the requirements of this article applicable to such company. Whoever shall, directly or indirectly, aid in transacting insurance business in any such company without first receiving such certificate of authority, or, having received such certificate of authority, shall, after receiving from such insurance commissioner notice of the revocation thereof, continue to act as an agent for any such company, shall be deemed to be guilty of a misdemeanor, and, upon conviction by a court having jurisdiction, shall be fined not less than fifty dollars nor more than one hundred dollars; but nothing herein contained shall apply to insurance brokers doing business in this State for foreign insurance companies, as provided in this article.''

It is obvious that the contracts of insurance procured from the foreign companies through the agency of defendants and the Chicago brokers were unlawfully made by defendants under the provisions of this act.

Sections 3325-3341 prescribe the only method in which contracts of insurance can be made by or through agents for noncomplying companies upon property located in this State. These sections provide for insurance brokers proper, duly licensed under various restrictions, placing insurance with foreign companies. Policies so obtained are required to be stamped "This company has no deposits and no agents in Tennessee," and many other things are required of brokers undertaking to do this sort of business. It is not contended that the defendants were insurance brokers proper, or had complied with the provisions of the act of 1895 as contained in sections 3325-3341 of Shannon's Code.

Unless he be a broker, duly licensed and complying with the provisions of these sections of the Code, all contracts of insurance made by any person, except for himself, with unauthorized companies, on property in this State, are unlawfully made by such person.

Section 3316 of Shannon's Code is as follows:

"An agent or person shall be personally liable on all contracts of insurance unlawfully made by or through him, directly or indirectly, for or in behalf of any insurance company not authorized to do business in this State."

There is no escape from the meaning of this language. It must be conceded that these contracts of insurance procured for complainant by the defendants were unlawfully procured by defendants. Under the language of the statute, it makes no difference that the

policies were obtained indirectly through another firm of insurance men at Chicago.

Under the provisions of sections 3314 and 3315 heretofore quoted, it is unlawful for an agent to have any connection with a contract whereby foreign companies not admitted undertake to insure property in this State. Such a violation of law renders the agent liable to a criminal prosecution, and also, under section 3316, renders him financially responsible for all such contracts of insurance.

We think it can make no difference that complainant knew of this violation of the law by defendants. His knowledge did not make their act legal, or excuse them from the statutory penalties visited upon such dereliction.

The provisions of the statute are directed against companies and insurance agents, not against policy holders. The act is remedial in its nature, and was designed for the protection of the public.

The language of the act is that agents making such unlawful contracts of insurance shall be personally liable thereon; that is to say, the agent is liable as if he were the insurer—as if he individually had written the policy. There can be no question upon this record that, viewed as an insurer upon these several policies, defendants are liable to the complainant for the loss sustained.

In *Morton* v. *Hart,* 88 Tenn., 427, 12 S. W., 1026, this court held an agent personally liable, for writing a policy in a foreign company not admitted to do busi-

ness in Tennessee, for a loss that occurred by reason of the company's insolvency, although at that time there was no statute imposing such liability upon the agent in express terms.

The courts of the several States have generally held insurance agents writing policies in unauthorized companies, liable for loss. In some of the States there are statutes expressly rendering the agents liable, and in some States there are no such provisions. See *Burgess v. Jackson,* 18 App. Div., 296, 46 N. Y. Supp., 326; *Latham v. Harrod,* 71 Kan., 565, 81 Pac., 214; *Hartman v. Hollowell* 126 Iowa, 643, 102 N. W., 524; *Noble v. Mitchell,* 100 Ala., 530, 14 South., 581, 25 L. R. A. 238; *Price v. Garven* (Tex. Civ. App.), 69 S. W., 986.

A decree must be entered here for $7500 in favor of complainant against defendants, with interest from the date of the filing of complainant's bill. The costs of the case will be divided.

Petition to rehear denied.