## Asa Biggs *v.* Reliance Life Ins. Co.

## (*Jackson*, April Term, 1917.)

1. **INSURANCE.** Rebate.

In action on a life insurance policy, the insurance company could not defend on the ground that an agent's acceptance of a note for the premium was a "rebate" to insured within Thompson's Shannon's Code, section 3312, prohibiting rebates, and that such unlawful action rendered the policy contract void, since, where only a subsidiary or collateral agreement is violative of a statutory inhibition, and it is capable of segregation for denunciation, the policy itself should not be declared void; the statute not having so provided in explicit terms. (*Post, pp.* 601-603.)

Acts cited and construed: Acts 1891, ch. 122.

Case cited and approved: Cary Lombard Co. v. Thomas, 92 Tenn., 587.

Case cited and distinguished: Singer Mfg. Co. v. Looney, 103 Tenn., 262.

Code cited and construed: Sec. 3312 (Thomp. Shan.)

2. **CONTRACTS.** Prohibition by statute.

Generally, a contract explicitly prohibited by statute is void, and a prohibition may be implied from the fact that a penalty is prescribed; but the rule is not an inflexible one. (*Post, pp.* 604-608.)

Cases cited and approved: Woolwine v. Mason, 128 Tenn., 43; Laun v. Pac. Mut. L. Ins. Co., 131 Wis., 555; McNaughton v. Des Moines L. Ins. Co., 140 Wis., 214; Rideout v. Mars, 99 Miss., 109; Security Life & An. Co. v. Costner, 149 N. C., 293; Security Life I. Co. v. Allen, 170 S. W. 131.

Cases cited and distinguished: Pennypacker v. Capital Ins., Co., 80 Iowa, 56; Pangborn v. Westlake, 36 Iowa, 546.

FROM SHELBY.

Appeal from the Chancery Court of Shelby County.—ISRAEL H. PERES, Chancellor.

W. P. BIGGS, for appellant.

J. W. CANADA, for appellee.

MR. JUSTICE WILLIAMS delivered the opinion of the Court.

This is a suit to recover on a policy of insurance issued on the life of Howard A. Biggs, complainant's intestate.

The taking of the policy was solicited by H. T. Adams, as agent of the defendant. In December, 1913, Adams was a contestant for an automobile offered by his company to the agent, who should write the greatest amount of insurance during that month. He applied to Biggs and two other friends to take policies and thus aid him to win the prize. He was urged to apply to Biggs and the others by his superior, the supervisor of agents, who advised Adams "to write them even though Adams had to take a long chance on the collection" of the premiums on same. Biggs, upon being solicited, replied that he did not want to take a policy because he was not able to pay for it. Adams then proposed that if Biggs

would take a $5,000 term policy he would deliver the policy and take Biggs' note in payment, same to mature April 1st, at which time, if Biggs was not able to pay, Adams would carry the note, and cause Biggs no further concern until he saw fit to settle with Adams. The note was intended to be and was discounted in bank, and its portion of the first premium, or "net," was settled for with the company at its home office by Adams and his supervisor.

The policy contract was promptly written and delivered, and, as Adams testifies, in good faith. At the note's maturity, Adams paid the bank and took over the note. In June following, Adams asked Biggs for a part payment on the note; but the latter was not in financial condition to make it. The agreement between the agent and the insured was that the former would carry the note until the latter was able to pay, and the agent says he was under moral obligation not to sue; the note, however, was deemed a legal obligation. Adams testifies that he would have taken no steps to enforce collection. Biggs died in the following November without having made any payment on the note. The company contends that in April Biggs repudiated the note as one having no true existence, but the record does not sustain the claim.

The decree of the chancery court was in favor of the defendant company, and from that decree an appeal was prayed to this court.

Biggs v. Reliance Life Ins. Co.

The question has been raised and debated whether these facts establish that there was a rebate given to the insured within the meaning of our statute on that subject. We find it unnecessary to decide that question, as we are of opinion that, if they were held to constitute such a rebating, the complainant is entitled to recover notwithstanding.

Section 3312 of Thomp. Shan.. Code, above referred to, is identical with that passed in many other States:

"No life insurance company doing business in Tennessee shall make or permit any distinction or discrimination between insurants of the same class and equal expectation of life in the amount or payment of premiums, or rates charged for policies of life or endowment insurance, or in the dividends or other benefits payable thereon, or in any other of the terms and conditions of the contracts it makes; nor shall any such company, or any agent thereof, make any contract of insurance or agreement as to such contract other than is plainly expressed in the policy issued thereon, nor shall any such company or agent pay or allow, or offer to pay or allow, as an inducement to insurance, any rebate or premiums payable on the policy, or any special favor or advantage in the dividends or other benefits to accrue thereon, or any valuable consideration or inducement whatever, not specified in the policy contract of insurance."

As indicated above, the defendant company contends that there was a rebate granted and received, which, being prohibiting by the statute, rendered the policy contract void, with result that there can be no recovery on the same.

The only case cited by the insurance company in support of its position, and the one evidently considered to be controlling by the special chancellor, is *Cary-Lombard Co.* v. *Thomas,* 92 Tenn., 587, 22 S. W., 743. It was there held that where a foreign corporation had failed to file a memorandum of its charter as required by Acts 1891, chapter 122 (Thomp. Shan. Code, sections 2546, 2547), all contracts made by it in this State were illegal, and that the corporation could have no recovery thereon. It was not held that the contract was void for every purpose. It has never been ruled by this court that a contract so entered into was so far void as to be un-enforceable by the other contracting party. The contrary was indicated in the later case of *Singer Mfg. Co.* v. *Looney,* 103 Tenn., 262, 52 S. W., 879, by this language:

"It must be borne in mind that as between the parties the contract is not void, and the principle which prevents the plaintiff's recovery is that the courts will not lend their aid to enforce contracts and transactions made in fraud and violation of its laws, and which it has impliedly prohibited."

The great weight of authority in other jurisdictions is to the effect that the corporation itself will

not be heard to say that the contract is void for such reason, for the purpose of defeating the other con-tracting party, and thus take advantage of its own wrong. 12 R. C. L., 89, and cases cited.

We are of opinion that no support of the special chancellor's construction and application of the case of Cary-Lombard L. Co. v. Thomas, supra, can be found in our decisions or in sound reason.

It remains to be determined whether his decree can be sustained on other grounds.

In arriving at the effect of the statute (section 3312) on the validity of the policy contract, there is open for consideration the objects and reach of the statute, its subject-matter, the mischiefs aimed to be corrected, the class of persons sought to be control-led, and whether the legislative intention will be sub-served by holding the policy contract valid or in-valid.

It is observed that the statute regulates a particu-lar branch of a business, and the course of conduct to be pursued by corporations, and agents of cor-porations, of that class. There is no affirmative pre-scription as to the course of conduct of the insur-ants treated with by the company. The policy con-tract is not declared in terms to be void in the hands of the one claiming to be insured. The specific pro-vision of the statute relied upon by the company is the one leveled at the agent's paying or allowing, as an inducement to insurance, any rebate of pre-mium.

The general rule, broadly stated, is that a contract explicitly prohibited by statute is void, and that a prohibition may be implied from the fact that a penalty is prescribed. But the rule is not an inflexible one, and mere imposition of a penalty does not of necessity, or in all circumstances, mean that a contract in contravention of the statute is so far void as to be unenforceable by any one a party to it. The courts, the statute not in terms denouncing the contract as void, may look to the indicia above refersed to and gather a more limited legislative purpose, especially where it is not necessary to declare the contract absolutely void in order to accomplish the legislative design.

Reverting then to the facts that only one party's course of action is prescribed, and that the penalty for nonobservance falls only on the company or its agent, the following authorities are pertinent:

*Pennypacker* v. *Capital Ins. Co.*, 80 Iowa, 56, 45 N. W., 408, 8 L. R. A., 236, 20 Am. St. Rep., 395, was a case where an Iowa insurance company, without having obtained license under the laws of Pennsylvania, insured against loss by fire real property in that State. The statutes of the latter State forbade such insurance by an unlicensed insurance company, and made the act of writing such insurance punishable by fine. In an action to recover for loss by fire upon a policy so written, the insurance company contended that the policy was void; but it was held that

the contract of insurance was valid notwithstanding the statutes. It was there said:

"The evident purpose of such a law is the protection of those paying for insurance upon property in that State. The prohibition and penalty is against the company only. No duty is required of the insured, and no act upon his part expressly prohibited. There is nothing in the law declaring what effect it shall have upon policies issued and accepted as this is alleged to have been."

See, in this connection, *Woolwine* v. *Mason,* 128 Tenn., 43, 157 S. W., 682.

*Pangborn* v. *Westlake,* 36 Iowa, 546, was a case where a statute forbade the sale of any lot in any town or addition until the plat thereof was acknowledged and recorded, and imposed a forfeiture of $50 for each lot sold or disposed of in contravention. In considering whether a contract for the sale of a lot in a plat that had not been recorded was void on account of this statute, and holding that it was not, the court said:

"We are therefore brought to the true test, which is that while, as a general rule, a penalty implies a prohibition, yet the courts will always look to the language of the statute, the subject-matter of it, the wrong or evil which it seeks to remedy or prevent, and the purpose sought to be accomplished in its enactment; and if, from all these, it is manifest that it was not intended to imply a prohibition or to ren-

der the prohibited act void, the courts will so hold, and construe the statute accordingly.''

In *Laun* v. *Pac. Mut.·L. Ins. Co.,* 131 Wis., 555, 111 N. W. 660, 9 L. R. A. (N. S.) 1204, it was held that the granting of a rebate on the premium of a life insurance policy, contrary to the provisions of a similar statute, but which forbade the acts under a penalty of forfeiture of the company's license ,to do business, does not render the policy itself void. The same court, in the later case of *McNaughton* v. *Des Moines L. Ins. Co.,* 140 Wis., 214, 122 N. W., 764, which was a suit by the beneficiary on a policy, held that the policy was not void because of advantages given the insured contrary to provisions of the anti-rebate law.

In *Rideout* v. *Mars,* 99 Miss., 199, 54 So. 801, 35 L. R. A. (N. S.), 485, Ann. Cas., 1913D, 770, the court proceeded upon the basis of the validity of such a policy contract.

In *Security Life & An. Co.* v. *Costner* 149 N. C., 293, 63 S. E., 304, where the statute invoked was similar in nature, like views were expressed. There the insured was given a special contract providing for reduction in the amounts of the second and subsequent premiums, and the court held that this collateral contract violated the statute, but that it did not follow that the policy was void, or that the note given for the first premium was unenforceable; it being for the proper amount. See, also, *Security*

*Life Ins. Co.* v. *Allen* (Tex. Civ. App.), 170 S. W., 131.

By the reasoning of the three cases last above cited, the agreement between the agent and the insured in the instant case that looked to the premium note being carried indefinitely by the agent, if that be assumed to be the legal effect of what was done, would be illegal and could not have been relied upon by the insured as a defense had suit been instituted against him by the holder of the note.

We are of opinion that the policy contract was not rendered void as to the insured. Contracts should be struck down only when it is necessary to vindicate a sound policy of the law, and only to the extent that may be required. Where only a subsidiary or collateral agreement is violative of a statutory inhibition, and it is capable of segregation for denunciation, the policy itself should not be declared void; the statute not having so provided in explicit terms. We do not believe that the legislature intended that the policy should be unenforceable when issued in the circumstances of this case.

Here the full first premium was covered into the note which became the binding obligation of its maker, unless he were subject to be released by reason of the collateral agreement made with the agent. If it be conceded that one step in the negotiation violated the provisions of the statute, we can see no merit in the insistence of the company that it should

he released from liability. Its portion of the premium was received by it and is yet held, without even an offer on its part to return the same.

Reversed, with decree for the amount of the policy and accrued interest.