### DAVID WITHERSPOON, INC., Plaintiff-Appellee,

v.

### Malcolm WOOD and Safeco Insurance Company of America, Defendants-Appellants.

Court of Appeals of Tennessee, Eastern Section.

June 8, 1979.

* Certiorari not requested. Published with the approval of a committee of the Court appointed by the Presiding Judge.

Charles D. Susano, Jr., Knoxville, for defendants-appellants.

Charles E. Rader, Knoxville, for plaintiff-appellee.

## OPINION

GODDARD, Judge.

Malcolm Wood and Safeco Insurance Company of America, his bonding company, Defendants-Appellants, appeal a $1288 judgment rendered against them in favor of David Witherspoon, Inc., Plaintiff-Appellee. John Ivester Auction Company, Inc., a co-defendant, against whom a default judgment was entered, has not appealed. While there are seven assignments of error, the last six of which address specific findings and holdings of the Court, a resolution of the first assignment, hereinafter set out, is dispositive of this appeal:

> The Chancellor erred in finding and holding that Malcolm Wood, and thus Safeco Insurance Company of America, was liable to the appellee for the proceeds of the auction sale which were paid to the appellee's agent.

The material facts of this case are practically undisputed. John Ivester Auction Company, Inc., of Shreveport, Louisiana, a company engaged in organizing and promoting auctions, organized an auction to be held in Alcoa, Tennessee, on October 21, 1976. In furtherance of this purpose, its representative solicited and obtained consignment of goods from the Plaintiff for inclusion in the sale. Five items were consigned (four of which were purchased at the sale by the Plaintiff) in accordance with a written agreement between Ivester and the Plaintiff which provided, among other things, the following:

> All checks shall be made payable to John Ivester Auction Co., Inc., as Owner's agent, shall have full authority to reclaim and resell any items not paid for as agreed in the terms of the sale. Owner understands that Auctioneers will be al-

lowed a period of 30 days following the sale to clear all checks and purchase orders and to comply with the Uniform Commercial Code and make full settlement with Owner.

Because Ivester was unlicensed in Tennessee it employed Mr. Wood, an auctioneer licensed in Alabama, which has a reciprocity agreement with Tennessee. Mr. Wood thereupon called to inquire about a license in Tennessee and talked to Howard Reed, an investigator for the Auctioneers' Commission. Mr. Reed testified concerning the conversation as follows:

Q Tell the Court, in your own words please, what was the substance of that conversation?

A Mr. Wood called in regard to a reciprocal agreement of his license from the State of Alabama. Tennessee has a reciprocal agreement with Alabama in regard to licenses. And during the course of the conversation, he, of course, inquired as to what would be necessary for him to get his license in the State of Tennessee. He said that he was going to conduct a sale for John Ivester Company. At that time, we told him that John Ivester was not licensed in the State of Tennessee and he would be responsible for the activities of the sale. This he agreed to so we sent him his license.

Upon obtaining his Tennessee license, Mr. Wood, who had no involvement in the collection of the bid price or the remittance to the seller, merely called the sale, collected his $300 fee plus travel expenses, and departed. When Ivester refused to remit the purchase price of the one piece of equipment which sold, the Plaintiff brought the present suit against Ivester, Wood and Safeco.

The Plaintiff relies upon regulation 0160–1–.01 of the Rules of the Tennessee Auctioneer Commission which provides that "the Auctioneer shall be responsible for the advertising and management of the sale and account for all proceeds therefrom and shall, over his signature, issue a closing statement to the seller or sellers."

The Defendants counter that in view of the fact that the Plaintiff appointed Ivester his agent that payment to Ivester was equivalent to payment to the Plaintiff and, consequently, they should not be liable.

This brings us to the crux of the lawsuit which is Plaintiff's second insistence that, in light of T.C.A. 62–1901—62–1922, which regulate auctioneers and make it unlawful to engage in the auction business without a license, the obtaining of the contract was an unlawful act and, consequently, the contract is void.

Although the Chancellor did not specifically find that the contract was void, it is implicit in his decision. T.C.A. 62–1901(A) which defines auctioneers, is not entirely clear. However, section (E) defines auction business as "the performing of any of the acts of an auctioneer or apprentice auctioneer as defined in this section." Included in the definition under section (A) is "negotiates or attempts to negotiate, a listing contract." We accordingly conclude that the negotiation of the contract without a license, a specific violation of the statute for which criminal penalties are provided under T.C.A. 62–1922, renders the contract void.

Thus, in view of (1) the statutes and the regulation above mentioned, (2) the testimony that Mr. Wood knew Ivester was unlicensed, and (3) the fact that Mr. Wood was advised that he would be responsible for the sale, we think that the Chancellor was correct. Moreover, to hold as insisted by the Defendants would render any protection afforded to the public by the act a nullity, because then any unlicensed person could employ a licensed auctioneer to cry a sale and neither the licensed auctioneer nor his bonding company would have any further responsibility in the matter. We think such a result would violate both the intent and the letter of the law.

In conclusion, we have not overlooked Defendants' insistence that even if the contract be prohibited by statute, it is not necessarily void for all purposes. In support of their insistence they cite a federal case which quotes from *Biggs v. Reliance Life Ins. Co.*, 137 Tenn. 598, 604, 195 S.W. 174, 176 (1917), as follows:

The general rule, broadly stated, is that a contract explicitly prohibited by statute is void, and that a prohibition may be implied from the fact that a penalty is prescribed. But the rule is not an inflexible one, and mere imposition of a penalty does not of necessity, or in all circumstances, mean that a contract in contravention of the statute is so far void as to be unenforceable by any one a party to it. The courts, the statute not in terms denouncing the contract as void, may look to the indicia above referred to and gather a more limited legislative purpose, especially where it is not necessary to declare the contract absolutely void in order to accomplish the legislative design.

We believe in light of the circumstances of this case and the protection sought to be afforded the public by the statute, that it is "necessary to declare the contract absolutely void in order to accomplish the legislative design."

For the foregoing reasons the assignments of error are overruled and the Trial Court affirmed. The costs of appeal are adjudged against the Defendants and their surety.

PARROTT, P. J. (E. S.), and SANDERS, J., concur.