Cary-Lombard Lumber Co. *v.* Thomas.

CARY-LOMBARD LUMBER COMPANY *v.* THOMAS.

*(Jackson.* May 20, 1893.)

1. HUSBAND AND WIFE. *Husband's liability.*

The husband is not personally liable, in the absence of express contract, for materials furnished to the wife's contractor for use in the erection of buildings upon her lands, held as a general estate, although he may have acted as her agent in the transaction with the contractor.

2. MECHANICS' LIEN. *Service of furnisher's notice; proof of.*

An officer's return indorsed upon the notice showing service, constitutes legal and sufficient proof of service of the required statutory notice to be given to the owner of property by the furnisher of materials to a contractor, in order to perfect the furnisher's lien for materials used in the erection of buildings upon the property.

Acts construed: Acts 1889, Ch. 103.

Case cited and distinguished : Bassett & Clapp *v.* Bertorelli, *ante, p.* 548.

3. FOREIGN CORPORATIONS. *Contracts of, illegal and not enforceable, when.*

The contracts of a foreign corporation, entered into in this State since Acts 1891, Ch. 122, are, as to such corporation, illegal and void, conferring upon it no rights or remedies enforceable, at its suit, in our Courts, if the corporation had not, before making such contracts, complied with the provisions of said Act, which prohibit foreign corporations, under the penalty of a misdemeanor, to do any business or acquire any property in this State until they have filed their charters in the office of Secretary of State, paying the required privilege tax therefor, and caused abstracts to be registered in the counties where they carry on their business.

Acts construed: Acts 1877, Ch. 31; Acts 1891, Ch. 122.

Cases cited and approved: Stephenson *v.* Ewing, 87 Tenn., 46; Haworth *v.* Montgomery, 91 Tenn., 16; State *v.* Phœnix Ins. Co., *ante, p.* 420.

4. SAME. *Same. Illegality, how shown.*

And, in such case, the foreign corporation will be repelled from our Courts, if the illegality of the transaction, though not pleaded, appears in the proof.

5. SAME. *Same. Presumption.*

And, where it appears from the proof that a foreign corporation complied with said Act at a certain date, but after the illegal transaction, no presumption will be indulged in its favor of compliance at any earlier date.

6. MECHANICS' LIEN. *Removal of materials.*

The rules are re-affirmed, as laid down in Cole Mfg. Co. *v.* Falls, 90 Tenn., 468, defining, regulating, and limiting the furnisher's right to remove materials used by a contractor in the erection of a house upon the property of a *feme covert.*

7. SAME. *Same.*

The furnisher's remedy by removal from the building of his materials used by a contractor in its erection, may be pursued, in cases where it exists, without attachment or previous judgment and execution for his debt.

---

FROM SHELBY.

---

Appeal from Chancery Court of Shelby County. W. D. BEARD, Ch.

L. W. FINLAY for Lumber Co.

SMITH & TREZEVANT for Thomas.

WILKES, J. Mrs. Flora L. Thomas, a *feme covert,* was the owner of a lot, holding a fee-simple title thereto as her general estate. Desiring to improve it as a home, she, through her husband as her agent, and personally, entered into a contract with one Marcus Miller to build her a dwelling upon the lot at a cost not exceeding $2,000.

Miller put up the frame-work of the house, and did some other work upon it, but left it in an unfinished condition, after having drawn $500 of the contract price, and Mrs. Thomas and her husband were compelled to expend very much more than the price agreed upon in order to have the same completed.

The Cary-Lombard Lumber Company furnished material and lumber in the construction of the house, amounting to about $1,249.

The Bluff City Brick Manufacturing Company furnished brick for the house to the amount of about $80.50.

These bills for materials not having been paid, the Bluff City Manufacturing Company gave notice to Mrs. Thomas that it would claim a lien upon the building, and had the same registered. The Cary-Lombard Lumber Company gave notice to Mr. and Mrs. Thomas that it would claim the benefit of the second section of the Act of 1889, providing for the removal of lumber and other materials furnished for buildings upon property belonging to a married woman, in the event they were not paid for.

Suit was thereafter brought to enforce the liens and remedies given by the Act, and also to hold E. R. Thomas, the husband, personally liable for the debts, upon the ground that Marcus Miller was simply his agent in the purchase of the materials.

On the hearing, the Chancellor was of opinion

that the proof did not warrant any personal judgment against the husband, and denied that relief, and dismissed the bill as to the husband. He also denied any relief whatever to the Bluff City Manufacturing Company because of insufficiency of the notice given, but gave judgment that the Cary-Lombard Lumber Company was entitled to remove from the premises of Mrs. Thomas such property and materials as it had furnished, and as had gone into the construction of the house and had not been paid for, and referred the matter to the Master to report what materials had been so furnished and used and not paid for, and whether the same could be removed from the premises without serious damage and injury to the remainder of the house.

Pending this reference, the Cary-Lombard Lumber Company and the defendants each appealed, and, the bill being dismissed, as to the Bluff City Manufacturing Company, no appeal was prayed by it, so that the only contention and controversy in this Court is between the Cary-Lombard Lumber Company and the defendants.

The lumber company insists that the Chancellor erred in not giving judgment in its favor against the husband, E. R. Thomas, and the defendants insist that the Chancellor should not have decreed the removal of any of the material from the lot or building, and should have granted no relief against the property of Mrs. Thomas.

We have carefully examined the record upon

the facts of the case. While the evidence is quite conflicting and contradictory, we are of opinion that the weight of the consistent, reliable testimony is very decidedly in favor of the Chancellor's finding, and we affirm the decree, so far as it declines to hold the husband, E. R. Thomas, individually liable for the debt sued on.

As to the relief sought against the property, it is insisted that there is no sufficient legal proof of the service of the notice required by the second section of the Act of 1889. The notice is copied in the record, together with the indorsements thereon, and it is conceded that it is sufficient in substance and form, but it is contended that there is no legal evidence of its service upon Mrs. Thomas. It is claimed that such a notice is not process, but simply a private paper, and that, in order to prove the service of such notice, the testimony of the party making the service must be taken as the testimony of any other witness to prove any other fact material to the controversy. In this case the notice was served by a Deputy Sheriff, and his return of service is indorsed upon the notice, and his affidavit, made out of Court and before a Notary Public, of the fact of service is also indorsed upon the notice or a paper accompanying it. This, we think, is sufficient. While the affidavit was unnecessary, the return of the officer was, in itself, all that was necessary to make legal evidence of service, and has all the verity and effect of such an indorsement upon any

process. The return of the officer indorsed upon the notice is sufficient proof of service. There is nothing in the case of *Bassett & Clapp v. Bertorelli, ante,* p. 548, in conflict with this holding.

Again, it is insisted that complainant is not entitled to any relief because it is a foreign corporation, and, at the time the lumber was furnished and contracts entered into, it had not complied with the provisions of the Acts of 1891, Ch. 122, and of the Acts of 1877, Ch. 31, prescribing the terms upon which foreign corporations may transact business in Tennessee.

These Acts require that any foreign corporation, desiring to own property or carry on business in this State, of any kind or character, shall first file in the office of the Secretary of State a copy of its charter, and cause an abstract of the same to be recorded in the office of the Register in each county in which such corporation desires or proposes to carry on its business, or to acquire or own property, as required by Section 2 of Chapter 31 of the Acts of 1877; and it shall be unlawful for any foreign corporation to do or attempt to do any business, or to own or to acquire any property in this State, without having first complied with the provisions of the Act, under penalty of a fine of not less than $100 nor more than $500, at the discretion of the jury.

It appears from the record that the charter of the Cary-Lombard Lumber Company was registered in the office of the Secretary of State on the twenty-

fifth of July, 1891, and an abstract of the same was registered in Shelby County on the twenty-eighth of July, 1891, at 1:45 P.M. It does not appear that such registration was made at any prior dates.

This Act of 1891, Chapter 122, has, by this Court, been held to be a valid and constitutional law. *State* v. *Phœnix Fire Insurance Co., ante, p.* 420 (Vol. 21 S. W. Rep., page 893). After this Act went into effect, March 21, 1891, by its terms and provisions this foreign corporation was not authorized to do any business, or to own any property in Tennessee until the provisions of the Act were complied with. It could, therefore, after that Act was passed, own no property and make no legal contract in Shelby County, where this property was situated, until the abstract or memorandum was recorded in the Register's office of that county, which, as before stated, was the twenty-eighth of July, 1891. All contracts made by it and all business transacted by it in Shelby County between these dates were illegal, and no rights of property or of action could arise out of the same.

It follows that such company can have no remedy growing out of any transaction between these dates in Shelby County, and can recover upon no contract, express or implied, entered into between these dates, and is not entitled to retake or recover any materials or lumber furnished within these dates. *Stevenson* v. *Ewing*, 3 Pick., 46; *Haworth* v. *Montgomery*, 7 Pick., 16.

38—8 P

The illegality of these transactions is not set up in the pleadings, but only appears from the proof, and the Chancellor held that, in this condition of the case, he would not refuse complainant relief upon the presumption that no abstract had been recorded prior to July 28, 1891. In this we are of opinion the Chancellor was in error.

. The Courts will deny any relief upon any illegal contract or transaction, whenever the illegality is made to appear, whether in the pleadings or proof, and will repel the party guilty of the illegality from the Court whenever the fact appears.

In order to entitle the complainant to any relief, it must show affirmatively that it had complied with the law; until that is done, all its transactions are illegal. The burden of proof being upon it, the Court can presume nothing in its favor, and can only hold such of its contracts enforcible as it shows were made after it had complied with the law enabling it to make a valid contract, and to transact business.

The decree of the Chancellor in favor of the complainant lumber company, will be reversed and modified, and the cause remanded to the Court below, with instructions to ascertain what lumber and materials were furnished by complainant on and after July 28, 1891, and used in the construction of the buildings upon defendant's premises.

The complainant will have the right to remove all such material as has not been paid for under the rules and restrictions laid down in *Cole Manu-*

*facturing Co.* v. *Falls,* 6 Pickle, 468, unless the defendants pay therefor their actual value. The cost of the appeal will be paid by the complainant, Cary-Lombard Lumber Company.

---

OPINION ON REHEARING.

WILKES, J.   Upon petition to rehear, it is earnestly pressed upon the Court that it was not intended by the Legislature that, by declaring the doing of any business to be unlawful, it should follow that any contract made in contravention of it should be void; that it was not intended to prohibit the business on the ground that it was immoral or against public policy, or because it was desired to suppress the same, and submitting that the Courts should enforce the contracts of foreign corporations who did not comply with the Act, leaving the State to compel a compliance with the laws by enforcing the penalty for failure. This identical view of the question was passed upon by the Court in *Stevenson* v. *Ewing,* 3 Pickle, 50, and it is there said: "When a contract is prohibited by statute, it is immaterial to inquire whether the statute was passed for revenue only or for any other object. It is enough that Parliament has prohibited it, and it is therefore void."

By the very terms of the Act of 1891, Chapter 122, Section 3, it is made unlawful for any corpo-

ration to do, or attempt to do, any business, or to own or acquire any property in the State without having first complied with the provisions of the statute.

Every transaction or contract, express or implied, made by a foreign corporation after the passage of this Act, March 21, 1891, and before its charter was filed and memorandum recorded as the law provides, was illegal, and no rights or remedies can be predicated thereon in favor of the company. With the wisdom and policy of the law this Court has nothing to do. It can only execute it as it is on the statute books, and cannot refuse to enforce it.

A petition to rehear is also presented by the defendants, in which it is insisted that complainants are entitled to no relief, and their bill should be dismissed because they have not proceeded to enforce their rights by attachment or judgment and execution, and the case of *Dollman* v. *Collins* is cited as controlling.

It is clear that the second section of the Acts of 1889, Chapter 103, giving the right of removal, is a new and additional remedy provided by that Act, to be applied only in cases provided for therein. Clearly, under this section, there is no need of attachment, or of judgment and execution, and neither of these remedies would be proper in such case; but the complainant's remedy is plainly pointed out in the statute, and must be pursued as the Act directs, keeping in view, however, the

condition that the removal must be made without injury to the property, and with due care for the protection of others who may be interested therein, the general rule being as stated in the case in 6 Pickle, 478, and to be applied by the Court below under the facts of each particular case.

Both petitions to rehear are dismissed.