### PENN COLLIERIES CO. v. McKEEVER.

(Supreme Court, Appellate Division, First Department. April 22, 1904.)

1. CORPORATIONS—FOREIGN CORPORATIONS—DOING BUSINESS IN STATE—WHAT CONSTITUTES.

　　A foreign corporation, the office of which is in another state, and which merely has an agent in this state, who maintains an office for his own convenience, and does not have exclusive control of the business in the state, and keeps no books nor bank account, and makes no contracts for the sale of goods, but reports everything to the home office, and who usually makes sales to parties outside the state, and, while a particular sale was made of coal situated in the state to a resident, it had been previously sold to a party without the state, who had rejected it, is not doing business in the state within Laws 1892, p. 1805, c. 687, as amended by Laws 1901, p. 1326, c. 538, pescribing the conditions on which foreign corporations may do business in the state.

　　Laughlin, J., dissenting.

Appeal from Trial Term, New York County.

Action by the Penn Collieries Company against Edward J. McKeever. From a judgment for plaintiff, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Frank B. York, for appellant.
Francis S. McGrath, for respondent.

PATTERSON, J. The plaintiff, a foreign corporation, recovered a judgment against the defendant in an action for goods sold and delivered. The only defense interposed was that at the time mentioned in the complaint the plaintiff was doing business in the city of New York, where the contract of sale referred to in the complaint was made, and at that time and prior thereto it had not procured from the Secretary of State of New York a certificate that it had complied "with all the requirements of law to authorize it to do business within the state," and that by reason of the failure to obtain such certificate this action could not be maintained. Upon the trial, which was before the court without a jury, it was held, under the proofs, that the plaintiff was not doing business in the state, within the meaning of section 15 of the general corporation law (Laws 1892, p. 1805, c. 687), as amended by chapter 538, p. 1326, of the Laws of 1901. I think the court below was right in so holding. The plaintiff's office is in Philadelphia. It had

an agent in New York City, and there was maintained here what is called a "branch office," but it was for the agent's convenience. It does not appear that the plaintiff was conducting business at that office, and the agent says he did not have exclusive control of the business of the plaintiff in this city. The merchandise sold to the defendant was a cargo of coal, and the business of the plaintiff was the selling of coal and shipping it to buyers. The agent in New York did not make contracts for the sale of coal. He reported everything to Philadelphia. No books of account of the plaintiff were kept in the state of New York. The plaintiff had no bank account in the state, and did not keep coal or other goods therein. Apart from the coal sold to defendant, no merchandise offered for sale through the New York agent was situated in the state at the time it was sold; and in every instance except 6 out of 350 sales made through the agent the sales were to parties outside the state of New York. This particular cargo of coal which the defendant received and now refuses to pay for was, at the time of the sale, within the state of New York, but it had been sold in Philadelphia to a party to whom it was to be delivered here, but who had rejected it.

The case resembles in its facts that of Cummer Lumber Co. v. Associated Ins. Co., 67 App. Div. 151, 73 N. Y. Supp. 668. There the evidence established the fact that the plaintiff employed an agent within this state to solicit orders, and that agent had no office within the city of New York, and orders were sent from New York to the Cummer Lumber Company in Florida, where they were accepted, and the bills and goods were sent direct from the home office of the plaintiff corporation to the customers. It was held in that case that by maintaining the agency here the company was not doing business in this state within the meaning of section 15 of the general corporation law.

I am of the opinion that the judgment should be affirmed, with costs. All concur, except LAUGHLIN, J., who dissents.

LAUGHLIN, J. (dissenting). It appears that the plaintiff is a foreign corporation engaged in mining and selling coal; that it has an annual lease of an office in the city of New York in its own name, has telephone service in connection with the office in its own name, maintains its name upon the door of the office and upon the hall directory of the office building, together with the name of Frank H. Olcott as manager; that office stationery is permitted to be used by Olcott showing that the company maintains that office and that he is its manager; that the sale of the coal upon which this action is based was made by Olcott, as manager, in the city of New York. These facts, in my opinion, show that the plaintiff was doing business in this state. It is conceded that it has not obtained a certificate from the Secretary of State authorizing it to do business here. The contract having been made in this state, the plaintiff is, I think, precluded by section 15 of the general corporation law from maintaining an action thereon. Giving to the evidence on behalf of the plaintiff the most favorable construction, it merely shows that in fact Olcott was a sales agent on commissions, without authority to close contracts, except as specially authorized; that he merely took orders subject to the approval of the company at its home office without the state; and that, except in this in-

stance, where the coal happened to be here, having been rejected by the original consignee, the coal is shipped from without the state after the contract therefor is made, not in New York, but at the home office. If these facts would take the case from without the operation of the statute, the purpose of the Legislature in enacting the law would be thwarted. The plaintiff had the benefit of conducting its business, so far as the public is concerned, precisely as if Olcott was in fact its salaried manager and authorized to close contracts.

For these reasons I think the judgment should be reversed, and complaint dismissed.