ADVANCE LUMBER COMPANY *v.* M. L. MOORE.*

(*Jackson.*   April Term, 1912.)

1. FOREIGN CORPORATIONS. Doing business in this State
   without registering charters cannot enforce their contracts.
   Under our statutes (Acts 1895, ch. 81, amending Acts 1877, ch.
   31, and Acts 1891, ch. 122), making it unlawful for any foreign
   corporation to do business in this State, without previously
   complying with the provisions of said acts as to the registration
   of its charter, etc., a foreign corporation coming into this State,
   establishing itself, and carrying on business here, without com-
   plying with the said statutory requirements, cannot enforce its
   contracts growing out of its such business. (*Post, pp.* 316, 317.)

   Acts cited and construed:   Acts 1877, ch. 31; Acts 1891, ch. 122;
   Acts 1895, ch. 81.

   Cases cited and approved:   Lumber Co. v. Thomas, 92 Tenn., 587;
   Harris v. Water & Light Co., 108 Tenn., 245; Property Co. v.
   Nashville, 114 Tenn., 213.

2. SAME. Maintaining agency here to do business in adjacent
   States is not doing business here; and isolated transactions
   are not.
   A foreign corporation, engaged in the business of buying and
   selling lumber, and maintaining an office in this State in charge
   of a resident agent, who makes no sales, but looks after its
   purchasing business in adjacent States, is not engaged in

---

*Validity of contracts made by foreign corporation which has
not complied with conditions of right to do business in the State,
see notes in 24 L. R. A., 315 and in 1 L. R. A. (N. S.), 1041.

What constitutes "doing business" by a foreign corporation
within the State, see notes in 24 L. R. A., 295; 2 L. R. A. (N. S.), 127;
9 L. R. A. (N. S.), 1214; 10 L. R. A. (N. S.), 693; 18 L. R. A. (N.S.),
142; 18 L. R. A. (N. S.), 134.

business in this State, within the meaning of the statute (Acts 1895, ch. 81) making it unlawful for any foreign corporation to "do business in this State," without previously registering its charter, etc., though it made two or three purchases here as isolated transactions. (*Post, pp.* 317-323.)

Acts cited and construed: Acts 1895, ch. 81.

Cases cited and approved: John Deere Plow Co. v. Wyland, 2 Ann. Cas., 304, and note; Bradbury v. Waukegan, etc., Mining Co., 113 Ill. App., 600; People v. Feitner, 77 App. Div., 189, 78 N. Y. S., 1017; Penn. Collieries Co. v. McKeever, 93 All. Div., 303, 87 N. Y. S., 869; Doty v. Railroad, 8 Abb. Prac., 427; Hart v. Livermore Foundry, etc., Co., 72 Miss., 809; Honeyman v. Col. Fuel, etc., Co. (C. C.), 133 Fed., 96.

Cases cited and distinguished: Lumber Co. v. Thomas, 92 Tenn., 587; Insurance Co. v. Kennedy, 96 Tenn., 711; Harris v. Water & Light Co., 108 Tenn., 245.

3. **CHANCERY PRACTICE.** Reference to master for report as to account sued on, when it is large, of many items, and disputed, is proper.

Where the account sued on is large, and consists of many items, and there is a controversy about the account as a whole, and about some of the items, a reference to the master for investigation, and further proof, if necessary, and a report, is proper. (*Post, pp.* 315, 316, 322.)

---

FROM SHELBY.

---

Appeal from the Chancery Court of Shelby County (Part II).—FRANCIS FENTRESS, Chancellor.

CARUTHERS EWING and PERCY FINLAY, for complainant.

T. K. RIDDICK and L. B. McFARLAND, for defendant.

MR. JUSTICE GREEN delivered the opinion of the Court.

The Advance Lumber Company, an Ohio corporation, had certain contracts with M. L. Moore, a citizen of Memphis, Tenn., whereby Moore was to saw up and sell to the lumber company certain timber which he owned, located in the State of Arkansas. The timber was to be sawed and stacked, and, after inspection, delivered to the lumber company in Arkansas, and the company was to make certain advancements to Moore during the progress of getting out the timber, for which it was to have credit on final settlement.

The parties became involved in a controversy, each charging the other with a breach of the contract, and a bill was filed by the lumber company and certain proceedings had thereupon, the details of which it is not necessary here to elaborate, in the chancery court at Memphis. As the case was finally presented to the chancellor, it was in effect a demand by the lumber company for a decree for $20,055.91 against Moore, on account of advances made to him for which it had received no lumber.

By way of defense, Moore denied any indebtedness to said company, claiming that it owed him a large sum, asked for an accounting, and further pleaded that the complainant was a foreign corporation doing business in the State without having complied with the provisions of chapter 31, Acts of 1877, chapter 122, Acts of 1891, and chapter 81, Acts of 1895, respecting such

corporations, and was therefore not entitled to maintain any suit in the courts of Tennessee.

The chancellor decreed that the complainant was entitled to recover of defendant the amount shown to be due to it, upon the taking of an account between the parties, and ordered a reference to the clerk and master to take such account.

The defendant appealed from so much of the decree as held that the complainant was entitled to maintain this suit and have a recovery against him, and the complainant appealed from that part of the decree ordering a reference, and is here insisting that judgment should have been pronounced by the court upon the record before it.

Considering first the contention of the defendant that the lumber company is not entitled to maintain this suit on account of its failure to comply with our laws respecting foreign corporations, we will briefly review the statutes and decisions upon this subject.

By chapter 81 of the Acts of 1895, amending the former acts heretofore referred to, it was declared "unlawful for any foreign corporation to do, or to attempt to do, business in this State" without having complied with the provisions of these several acts as to the registration of its charter with the secretary of State, etc.

As heretofore observed by this court, "the acts in question have been the subject of frequent examination and application by this court, and it may be taken as the settled rule that where a foreign corporation comes into this State and establishes itself, carrying on busi-

ness in disregard of the provisions of these acts, that its contracts made in such business will not be enforced." *Harris* v. *Water & Light Co.,* 108 Tenn., 245, 67 S. W., 811. See, also, *Louisville Property Co.* v. *Nashville,* 114 Tenn., 213, 84 S. W., 810, and cases there cited; *Cary-Lombard Lumber Co.* v. *Thomas,* 92 Tenn., 587, 22 S. W., 743.

It is said, however, for the complainant, that it has never done business, or attempted to do business, within the State, within the meaning of the statutes respecting foreign corporations, and should not therefore be repelled from our courts by reason of the provisions of these acts.

As stated before, the complainant is an Ohio corporation, with its principal office in the city of Cleveland. It has never had any mills, lumber yards, or other property in Tennessee, save some money in a Memphis bank, and perhaps office fixtures in an office maintained by a purchasing agent in Memphis. It has never bought any timber or lumber in Tennessee, and has never sold any here save on one or two occasions, when it sold and shipped an order or two from without the State to parties in Memphis.

The company has an office in Memphis in charge of a resident agent. He makes no sales whatever and is without authority to make sales. The company buys all the lumber it handles in the States of Georgia, Mississippi, and Arkansas, and the lumber is shipped from those States directly to purchasers in other States. None of this lumber is stacked or kept or sold in Tennessee. For

convenience this company has located a purchasing agent at Memphis to look after its purchasing business in the adjacent States.

On its letter heads, this company advertises itself as having a Memphis office, and on one occasion, when the lumberman's convention met in that city, it advertised that it would keep open house at its Memphis office during the convention, and invited all lumber men to drop in that office and see its agent, whether they had lumber to buy or sell.

A witness for defendant testifies to having sold mill machinery to the lumber company in Memphis; but it rather appears, from his examination, that this machinery went to mills out of the State. It is clear that the company had no mills in Tennessee for which it would be buying machinery.

It appears from the testimony of another witness for defendant that he may have sold this company lumber in a Memphis yard on one or more occasions. The witness is uncertain about the matter, however. This purchasing agent probably made contracts with others as he did with defendant in Memphis for the purchase of timber outside the State, and he probably made payments to parties in Memphis on account of timber purchased out of the State.

The question then recurs: Did the maintenance of this agent, or agency, in Memphis, under the circumstances detailed, amount to a doing of business within the meaning of our statutes?

This company had nothing to sell in Tennessee and sold nothing here; neither did it buy here, with the possible exception of two or three isolated transactions.

The business of this company was the buying and selling of lumber. It did neither, in Tennessee, as a business, but only kept an agent here for convenience to look after its purchasing business in adjacent States.

We do not think that the company, by its agency in Memphis, was engaged in the general or ordinary prosecution of its business within the limits of Tennessee, so as to bring it within the provisions of our statutes relating to foreign corporations. Unless the agency in Memphis was maintained for the general prosecution of the company's ordinary business within this State, then the maintenance of such agency did not constitute a doing of business in the State within the meaning of the statutes.

Judge Thompson, in his article on Foreign Corporations in 19 Cyc., 1270, with respect to these statutory restrictions upon foreign corporations entering and doing business within the several States, says:

"These prohibitions are leveled against the act of foreign corporations entering the domestic State by their agents and engaging in the general prosecution of their ordinary business therein, and they do not apply therefore to acts not constituting any part of their ordinary business."

To the same effect, see the note (page 308) under *John Deere Plow Co.* v. *Wyland,* 2 Ann. Cas., 304.

A number of the States have statute similar to ours with respect to foreign corporations, and the test just mentioned is frequently applied to determine whether particular acts constitute the doing of business within the meaning of the statutes.

In two New York cases, where foreign corporations maintained offices in New York, at which the directors met and declared dividends and some other details were attended to, but all the property and all the business of the company was transacted without the State, it was held that the establishment of such offices in New York did not bring these corporations within the terms of the statute here: *People* v. *Feitner,* 77 App. Div., 189, 78 N. Y. S., 1017; *Honeyman* v. *Col. Fuel, etc. Co.* (C. C.), 133 Fed., 96.

The Illinois courts have held that a mining company doing no mining or smelting business in the State, but having an office for the convenience and use of the secretary and treasurer of the company, although stock certificates were issued from that office, books kept, and directors' meetings held there, was not doing business within that State. *Bradbury* v. *Waukegan, etc. Min., etc. Co.,* 113 Ill. App., 600.

In another New York case it was held that where a foreign corporation had an agent in that State, who maintained an office for his own convenience, and did not have exclusive control of the business in the State, kept no books or bank account, and made no contracts for sale of goods, but reported everything to the home office and usually made sales to persons outside the

Lumber Co. v. Moore.

State, under such circumstances, such corporation was not doing business in that State. *Penn. Collieries Co.* v. *McKeever,* 93 App. Div., 303, 87 N. Y. S., 869.

It was also held in that State that a foreign railroad company, which had its entire road and traffic without the limits of the State, did not do business within the State, although its agent sold tickets for passage over the road. *Doty* v. *Michigan Central R. R. Co.,* 8 Abb. Prac., 427.

The Mississippi court has held that a foreign corporation, which has an office in that State, but uses such office only for the purpose of dealing with citizens of other States in reference to property located outside the State, cannot be said to be engaged in business in the State, within the meaning of the statute, even though the parties meet in the State and agree upon the terms of their contracts relative to such property. *Hart* v. *Livermore Foundry, etc., Co.,* 72 Miss., 809, 17 South., 769.

Other athorities to the same effect are collected in the note, heretofore referred to, under *John Deere Plow Co.* v. *Wyland,* supra.

So it is we are of opinion that this complainant did not maintain its agency in Memphis for the usual and ordinary prosecution of its business within the State, but it maintained such agency as a matter of convenience for the prosecution of its business in other States. Such business as it did within the limits of this State did not bring it within the provisions of our statutes respecting foreign corporations.

In *Cary-Lombard Lumber Co.,* 92 Tenn., 587, 22 S. W., 743; *Insurance Co.* v. *Kennedy,* 96 Tenn., 711, 36 S. W., 709; *Harris* v. *Water & Light Co.,* 108 Tenn., 245, 67 S. W., 811, and other cases in which the right of noncomplying foreign corporations to maintain suits in this State was denied, in all of those cases, the company was selling its goods, selling its insurance policies, lending its money, or prosecuting its usual and customary business within the borders of the State. None of these cases are therefore in point here.

We are of opinion accordingly that the complainant here is entitled to maintain this suit, and the chancellor was correct in so holding.

The account between these parties is large, and consists of many items, and there is a controversy about the account as a whole and about some of the items. We think this account was properly referred to the master for investigation, further proof, if necessary, and a report. The chancellor correctly held that there should be a reference on these matters before he made his decree.

The decree of the chancellor, therefore, will be affirmed, and this case remanded to the court below for the execution of that decree, and the costs of this appeal divided between the parties. The costs below will be adjudged by the chancellor.