INTERSTATE AMUSEMENT Co. *v.* ALBERT *et al.**

(*Knoxville.* September Term, 1913.)

1. **COMMERCE.** Interstate commerce.

"Commerce" among the States consists of intercourse and traffic, including the transportation of persons and property as well as the purchase and exchange of commodities. (*Post, p.* 423.)

Acts cited and construed: Acts 1877, ch. 31; Acts 1891, ch. 122; · Acts 1895, ch. 81.

Cases cited and approved: Railroad v. Harris, 99 Tenn., 684; Brennan v. City of Titusville, 153 U. S., 289; Milan Milling Co. v. Gorten, 93 Tenn., 590; Mobile County v. Kimball, 102 U. S., 702; Williams v. Fears, 179 U. S., 270.

2. **COMMERCE.** Interstate commerce.

Complainant operated a theatrical "circuit" by contracting as agent for the owners of various theaters to furnish theatrical talent in consideration of $10 a week for certain weeks in the year, and of five per cent. of the amount paid by the owners to each troupe of actors furnished by complainant; complainant's contract with the owner stipulating against liability for failure of any actors to fulfill their contracts or for delay in arriving at the particular city. *Held,* that such a contract, made by complainant, whose general offices were in Chicago, with defendant, to furnish various troupes of actors for playing in defendant's opera house in Chattanooga, Tenn., .did not involve interstate

---

*On the question whether soliciting trade constitutes doing business within the State, see notes in 9 L. R. A. (N. S.), 1214 and 23 L. R. A. (N. S.), 834.

The question of the right of a foreign corporation to sue is treated in a note in 24 L. R. A., 289. And upon the right of a foreign corporation which· has not complied with local laws to defend action, see note in 17 L. R. A. (N. S.), 1117.

128 Tenn. 27

commerce, so that complainant. was subject to Tennessee laws in executing such contract. (*Post, p.* 425.)

Case cited and construed:   Hooper v. California, 155 U. S., 648.

3. **CORPORATIONS.**   Foreign corporations.   "Doing business" within the State.

Complainant, a foreign corporation, which maintained general offices in Chicago, Ill., was engaged in booking actors to play in various theaters, and received for its services a certain sum from the theater owner and a commission retained by him out of the actors' salaries and paid over to complainant. For the purpose of enlarging its business, complainant sent agents into Tennessee, and made such contracts from time to time with the owners of various theaters besides defendant, and had had much correspondence with the owners of various theaters in the State. The contract with defendant for furnishing theatrical troupes was finally signed and accepted by defendant in Tennessee. *Held*, that complainant was "doing business" within the State, within Acts 1877, ch. 31, Acts 1891, ch. 122, and Acts 1895, ch. 81, prohibiting foreign corporations not complying with the statute from doing business in the State or maintaining any action, etc., so that complainant, not having complied with the statute, could not sue on the contract. (*Post, pp.* 425, 426.)

4. **CORPORATIONS.**   Foreign corporations.   Noncompliance with statutes.   Effect.

A foreign corporation, which does not comply with Acts 1877, ch. 31, Acts 1891, ch. 122, and Acts 1895, ch. 81, cannot maintain an action arising out of business transacted within the State, even though the illegality of such transactions only appears from the proof, and not from the pleading. (*Post, p.* 427.)

Cases cited and approved:   Cary-Lombard Lumber Co. v. Thomas, 92 Tenn., 587; Harris v. Water & Light Co., 108 Tenn., 245; Louisville Property Co. v. Nashville, 114 Tenn., 213; Lumber Co. v. Moore, 126 Tenn., 313; Insurance Co. v. Kennedy, 96 Tenn., 714; John Deere Plow Co. v. Wyland, 69 Kan., 255; Cone Export & Commission Co. v. Poole, 41 S. C., 70; Penn. Collieries Co. v. Edward J. McKeever, 183 N. Y., 98; A. Booth & Co. v. G. M. Weigand, 30 Utah, 135.

Amusement Co. v. Albert.

5. CORPORATIONS.  Foreign corporations. ."Doing business."

A foreign corporation is "doing business" within the State when it transacts therein some substantial part of its ordinary business, and its operations within the State do not consist of mere casual or occasional transactions.  (*Post, p.* 430.)

Cases cited and approved:  Chattanooga Bldg., etc., Association v. Denson, 189 U. S., 408; Lumberman's Insurance Co. v. Myer, 197 U. S., 407; Mutual Life Ins. Co. v. Spratley, 172 U. S., 602; Diamond Glue Co. v. U. S. Glue Co., 187 U. S., 611; International Text Book Co. v. Pigg, 217 U. S., 91.

---

FROM HAMILTON.

---

Appeal from Chancery Court, Hamilton County.— T. M. McCONNELL, Chancellor.

JOE V. WILLIAMS and COLEMAN & FRIERSON, for appellants.

W. E. DRUMMOND and W. B. MILLER, for appellee.

MR. JUSTICE BUCHANAN delivered the opinion of the Court.

The Amusement Company, when it made the contract on which this suit must stand or fall, when each item of the stated account on which it sued accrued, and when it brought this suit, and at the trial thereof, was a foreign corporation guilty of noncompliance with our statutes in respect of "all corporations chartered or organized under the laws of other States or countries for any purpose whatsoever which may desire to do

any kind of business in this State.'' The statutes above referred to are chapter 31, Acts 1877, chapter 122, Acts 1891, and chapter 81, Acts 1895.

And so, by way of defense to this suit, W. S. Albert, one of the defendants, set up the above facts in bar of the right of the Amusement Company to maintain this suit. He also made the defense of set-off, which is not sustained by the proof, and will not be further noticed.

By article 1, section 8, of the Constitution of the United States, one of the powers conferred upon congress is ''to regulate commerce with foreign nations, and among the several States, and among the Indian tribes.'' This grant of power to congress has been held by implication to exclude the several States from the exercise of such powers except by consent of congress. *Railroad* v. *Harris,* 99 Tenn., 684, 43 S. W., 115, 53 L. R. A., 921, and authorities there cited.

In *Brennan* v. *City of Titusville,* 153 U. S., 289, 14 Sup. Ct., 829, 38 L. Ed., 719, Mr. Justice BREWER, in the opinion of the court, said: ''It must be considered, in view of the long line of decisions, that it is well settled that nothing that is a direct burden upon interstate commerce can be imposed by the State without the consent of congress, and that silence of congress in respect to any matter of interstate commerce is equivalent to a declaration on its part that it should be absolutely free.''

It is first insisted for the Amusement Company that the business out of which the account arose under the

contract was commerce between different states, and therefore that our statutes referred to above have no application to, or effect upon, the contract, the account, the business done under the contract, nor upon the right of the Amusement Company to recover in this suit. This insistence, if sound, would result in our affirmance of the decree of the chancellor for $1,693.86 in favor of the Amusement Company. To sustain the above insistence *Milan Milling Co.* v. *Gorten,* 93 Tenn., 590, 27 S. W., 971, 26 L. R. A., 135, is cited. We approve that case.

But can the first insistence of the Amusement Compan be sustained under the facts of the present case? To answer this question requires a brief review of the facts.

The Interstate Amusement Company brought this suit by original bill in the chancery court of Hamilton. county on February 5, 1913, against W. S. Albert, Fletch Catron, and the Tennessee Realty & Leasing Company, a corporation under the laws of Tennessee.

The bill shows that the complainant is a corporation with its *situs* in Chicago, and that each and all of the defendants are domiciled in the county and State where the suit is brought.

That defendants Fletch Catron and W. S. Albert were formerly partners doing business under the firm name of Catron & Albert, and as such firm became indebted to the Interstate Amusement Company in the sum of $1,554, as shown by a statement of account cer-

tified to be correct by signature of the name of Catron & Albert, by W. S. Albert.

The corporate defendant was shown to have in its hands a certain sum of money more than sufficient to satisfy complainant's demand, and it was the purpose of the bill to impound that fund for the satisfaction of the decree prayed for against the other defendants. Before the suit was brought, Catron had become bankrupt, and, while he answered, made practically no defense to the suit. The corporate defendant made the usual answer of a mere stakeholder without other interest in the suit, and W. S. Albert set up the two defenses to which we have heretofore referred. The complainant relied on its account stated, and took no proof, and all of that which appears in the record was on behalf of the defendant Albert.

From the record, it is clear that, while the bill makes no reference to the existence of any written contract as the basis of the account stated exhibited with it, yet there was a written contract between the complainant and the firm of Catron & Albert, which was in fact the basis of that account.

It is clear from an examination of the contract that it created merely the relationship of principal and agent between the parties. By it the complainant became the agent of Catron & Albert, bound to render them the personal services called for by the contract in consideration of $10 per week for certain weeks in each year, and the further sum of five per cent of the amount paid by Catron & Albert to each troupe of

actors in each play furnished to the principal by the services of the agent; and the consideration for which the agent rendered its services was to forward it by the principal on Monday of each week from Chattanooga, Tenn., to Chicago, Ill., where the office of the agent was located.

"Commerce with foreign nations and among the States, strictly considered, consists in intercourse and traffic, including in these terms navigation, and the transportation and transit of persons and property, as well as the purchase, sale, and exchange of commodities." *Mobile County* v. *Kimball,* 102 U. S., 702, 26 L. Ed., 241.

The same court, in a case very much in point here, held that agents engaged in hiring laborers in the State of Georgia to be employed beyond the limits of that State were not engaged in interstate commerce, and while it was admitted *arguendo* in the opinion in that case that transportation interstate must necessarily take place as the result of the contracts, yet it was held not to follow that the emigrant agent was employed in transportation. *Williams* v. *Fears,* 179 U. S., 270, 21 Sup. Ct., 128, 45 L. Ed., 186.

So it is clear that, under the contract in the present case, and under the proof as it shows the execution of that contract, it was not contemplated that the complainant agent should engage, nor did it, in the execution of the contract, in fact engage, so far as this record shows, in the interstate transportation of the troupes of vaudeville actors. On the contrary, in

clause 5, the agent especially stipulates against liability or responsibility for failure on the part of any artist or artists (as the actors are called) to fulfill their contracts, and against any accident or delay which may intervene to prevent their arrival in Chattanooga when scheduled there to appear.

The true question before us, it must here be borne in mind, is whether the business between the Amusement Company and Catron & Albert, whereby the former was merely acting as go-between, middleman, or agent, involved or was interstate commerce. True it is that such commerce might or might not, so far as this record shows, become an incident or factor in the execution of the contract, which is to say that it might or might not be necessary for the actors employed by the agent to cross the State line in traveling to Chattanooga; but such interstate commerce, if it accrued as a consequence of the contract, would only be incidental to its execution, and not a part of it as between the parties to the contract. Such incidental connection of interstate commerce with the business contemplated by the principal and agent does not stamp that business with the character of interstate commerce. Speaking to the exact point, the present chief justice of the supreme court of the United States in the next case cited below called attention to this distinction, and to its observance in the authorities cited in that opinion, he said:

"If the power to regulate interstate commerce applied to all the incidents to which said commerce might

give rise and to all contracts which might be made in the course of its transaction, that power would embrace the whole sphere of mercantile activity in any way connected with trade between the States, and would exclude State control over many contracts purely domestic in their nature." *Hooper* v. *California,* 155 U. S., 648, 15 Sup. Ct., 207, 39 L. Ed., 297.

Under the facts of the case before us and the authorities above referred to, we are convinced that the contract and business out of which this suit arises was subject to the laws of Tennessee, and complainant's insistence that it was free from State control because it was interstate commerce is, we think, unsound.

The only remaining insistence for complainant is that this record does not disclose a doing by the company of business in Tennessee within the meaning of our statutes.

The contract was first signed by complainant in Chicago, but this signature did not make it a contract. It became a contract only when signed by Catron & Albert, and their signature was affixed to it in Tennessee at Chattanooga.

The amount the Amusement Company claims the right to recover from Catron & Albert in this suit is made up of two elements, as we have seen, each of which depends on, and directly grows out of, business which, in contemplation of the contract, was to be done in Tennessee. This business was the appearance of actors at the theater of Catron & Albert in Chattanooga, for the booking and employing of whom the

contract stipulated $10 per week for certain weeks should be paid to complainant, and out of the salaries of the actors five per cent. was to be withheld by Catron & Albert and paid to complainant. It is clear from this record that, for the purpose of enlarging and extending its business in Tennessee, complainant had agents who came into the State and made contracts with other owners of theaters than Catron & Albert; and it is shown by this record that Albert had much correspondence with owners of theaters looking to the extension of complainant's business. A large part of this correspondence was with persons who were residents of this State, and who were interested in theaters located here. While the complainant appears to have had no person located in this State and resident here which it admits was its agent, yet it cannot be doubted on this record that, whenever the nature of its business required the same to be done, it sent an agent to look after its business.

The seventh clause of the articles of association of the complainant states its purpose to be "to conduct and operate a general theatrical and amusement business."

This purpose if carried out, as is clearly shown in this record, by the establishment of what it called "circuits," on which were located theaters convenient each to the other, and its scheme contemplated the making of contracts with each of these theaters similar to that of Catron & Albert, and the collection of its revenues arising from booking fees and its percentages on

actors' salaries. It was distinctly a middleman, levying tribute from the owner of the house where amusement was afforded and from the actors whose talents were employed. Its operations in Tennessee were manifestly employed for the general prosecution of its ordinary business, and clearly within the prohibition of our statutes. It has been too long settled to need discussion that a foreign corporation guilty of noncompliance with these statutes can have no remedy growing out of its transactions made in violation of them; and this is true, even in a case where the illegality is made to appear by proof alone without a pleading pointing it out. *Cary, Lombard Lumber Co.* v. *Thomas,* 92 Tenn., 587, 22 S. W., 743. Also construing and applying these statutes are *Harris* v. *Water & Light Co.,* 108 Tenn., 245, 67 S. W., 811; *Louisville Property Co.* v. *Nashville,* 114 Tenn., 213, 84 S. W., 810; *Lumber Co.* v. *Moore,* 126 Tenn., 313, 148 S. W., 212; *Insurance Co.* v. *Kennedy,* 96 Tenn., 714, 36 S. W., 709.

Our latest case upon this subject is *Lumber Co.* v. *Moore,* supra, in which we held that the foreign corporation there under consideration had not been engaged in doing business in this State within the meaning of our statutes; but that case, we think, is distinguishable from the present case. In that case, with respect to statutory restrictions upon foreign corporations doing business within the several States, it was said:

"These prohibitions are leveled against the act of foreign corporations entering the domestic State by their agents or engaging in the general prosecution of their ordinary business therein, and they do not apply therefore to acts not constituting any part of their ordinary business."

In that case, upon its facts, we held that the foreign corporation did not maintain its agency in Memphis for the usual and ordinary prosecution of its business within the State, but that it maintained such agency as a matter of convenience for the prosecution of its business in other States. The distinction between that and the present case is that it was the ordinary business of the complainant Amusement Company to send troupes of actors from one theater to another in the State of Tennessee for the purpose of presenting plays to audiences assembled in each separate theater, and from the revenues derived by means of each performance the complainant Amusement Company in its turn under the contract sued on derived an income. The revenues it received arose directly from acts done in Tennessee in the several theaters where the troupes of actors appeared or performed. The contract sued on shows as many as fifty-three different items, each of which represents complainant Amusement Company's share of the revenues received from fifty-three separate and distinct performances by troupes of actors which complainant caused to appear in the one theater of defendants in the city of Chattanooga.

Just how many other theaters in Tennessee were operating under like contracts with the complainant company does not clearly appear in the record; but it is clear that complainant was using each of the troupes of actors for whose performance it seeks to recover in this case as an agency in the carrying on of its regular and ordinary business.

In *John Deere Plow Co.* v. *Wyland,* 69 Kan., 255, 76 Pac., 863, 2 Ann. Cas., 307; *Cone Export & Commission Co.* v. *Poole,* 41 S. C., 70, 19 S. E., 203, 24 L. R. A., 289; *Penn Collieries Co.* v. *Edward J. McKeever,* 183 N. Y., 98, 75 N. E., 935, 2 L. R. A. (N. S.), 127; *A. Booth & Co.* v. *G. M. Weigand,* 30 Utah, 135, 83 Pac., 734, 10 L. R. A. (N. S.), 693, and in the notes upon each of the above cases, an extensive collation of the authorities upon the question here involved, and kindred questions, will be found.

We do not think the present case falls within the doctrine announced in many of the authorities, which hold that an isolated business act within a State does not amount to the carrying on of business; nor do we think the present case falls within the principle announced in other authorities to the effect that business acts done in a State by a foreign corporation which are merely incidental to its business conducted at its domicile are outside of the prohibition of statutes similar in purpose to ours.

On the contrary, we think the present case falls within the general rule that a corporation is doing business within a particular State when it transacts there-

in some substantial part of its ordinary business, continuous in character as distinguished from merely casual or occasional transactions.

A corporation can act only through an agent or agencies; but it does not follow that a foreign corporation can evade our statutes by an insistence that it has no recognized agent in this State, if, under the facts of the case, it is clearly apparent that it is by means of agencies organized as a part of its ordinary business conducting that business continuously and regularly in this State, and deriving therefrom an income.

It may be said that the troupes of actors, by means of whose performances the complainant corporation in the conduct of its business in this State planned to derive its income, were not employed or paid by the complainant corporation, but, on the contrary, were employed and paid by the defendant partnership; but nevertheless each troupe caused by the complainant corporation to appear at the theater of the defendant partnership was an agency used by the complainant corporation in the conduct of its ordinary business, for the purpose of producing for it an income out of the conduct of its ordinary business, and the agency thus used performed the acts from which the income to the complainant corporation resulted in the State of Tennessee.

It is therefore apparent that the income which the complainant planned to derive from the execution of the contract, and for which income it sues to recover in this case, resulted as a sequence of the following

acts in the order named: First, the consent by complainant to the terms of the contract, which consent we must hold was given in Tennessee, since it is clear that the contract was consented to by the defendant partnership at Chattanooga, in that State; second, the engagement by complainant of the troupes of actors to appear on scheduled dates in the theater of the defendant partnership (this act was done, no doubt, by the complainant in its Chicago office); third, the actual appearance of the actors pursuant to this engagement in the theater at Chattanooga, Tenn.; fourth, the collection of admission money from the several audiences by the defendant partnership, and the remittance by it of complainant's share of the money so collected, as that share was fixed by the terms of the contract.

Thus, it is clear that three of the four business acts from which the income sued for resulted were acts done in Tennessee, and done or to be done there under the terms of the contract by the complainant through agencies employed by it. We think this brings it clearly within the general rule already announced.

As bearing upon the subject under discussion, and generally sustaining our views thereof, we cite the following additional authorities: *Chattanooga Bldg., etc., Association* v. *Denson,* 189 U. S., 408, 23 Sup. Ct., 630, 47 L. Ed., 870; *Lumberman's Insurance Co.* v. *Meyer,* 197 U. S., 407, 25 Sup. Ct., 483, 49 L. Ed., 810; *Mutual Life Insurance Co.* v. *Spratley,* 172 U. S., 602, 19 Sup. Ct., 308, 43 L. Ed., 569; *Diamond Glue Co.* v. *U. S. Glue Co.,* 187 U. S., 611, 23 Sup. Ct., 206, 47 L. Ed.,

331; *International Text-Book Co.* v. *Pigg,* 217 U. S., 91, 30 Sup. Ct., 481, 54 L. Ed., 678, 24 L. R. A. (N. S.), 493, 18 Ann. Cas., 1103.

Without further discussion, we hold that the indebtedness evidenced by the account sued on arose out of business conducted in this State by the complainant Amusement Company without precedent compliance on its part with our statutes already cited, and therefore that it cannot maintain this suit.

It results that the decree of the chancellor will be reversed, and the suit dismissed.

WILLIAMS, J. (dissenting).

I do not conceive that there is presented by this record a case of doing business in this State, under the statute cited, on the part of the Amusement Company. It had no plant, property, office, agent, or agency in this State. It was related to the resident firm of Catron & Albert as contractor to contractee, and to nonresident managers or players in like manner, and was but an intermediary. I fail to see how the respective contractual relations, conceived of singly, or (if that were permissible) in conjunction, can be said to fix upon the company the *status* assigned it by the majority.