**PAISLEY PRODUCTS, INC., DIVISION OF INTERNATIONAL LATEX & CHEMICAL CORPORATION, a Delaware Corporation,**

v.

**TROJAN LUGGAGE COMPANY, a Tennessee Corporation.**

Civ. A. No. C–68–134.

United States District Court
W. D. Tennessee, W. D.

Nov. 18, 1968.

Milton Picard and Eugene Greener, Jr., Memphis, Tenn., for plaintiff.

Herbert Glazer, Memphis, Tenn., for defendant.

## OPINION AND ORDER ON MOTION TO DISMISS

BAILEY BROWN, Chief Judge.

In this diversity case, plaintiff, a foreign corporation with principal place of business elsewhere, has sued defendant, a Tennessee corporation with principal place of business here, for the contract price of goods sold and delivered by plaintiff to defendant at Memphis. Defendant filed a motion to dismiss, asserting that plaintiff cannot maintain this action because it had not qualified to do business in Tennessee. In reality, this motion has been treated by the parties and the Court as a motion for summary judgment.

At the argument of the motion, counsel for the parties agreed that the record shows without dispute that plaintiff had not qualified to do business in Tennessee at the time of the involved transactions but that plaintiff had so qualified after suit was filed. They further agreed that the record so shows that the transactions were such transactions (i. e. intrastate) as are prohibited under Tennessee law unless the foreign corporation has qualified to do business here. They further agreed that if plaintiff could not maintain this action in state court, it could not maintain it in federal court. Woods v. Interstate Realty Co., 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524 (1949). They further agreed that the fact that plaintiff qualified after filing suit rather than before is of no significance for present purposes. Finally, they agreed that the narrow and only issue presented is whether, under T.C.A. § 48–901 et seq. enacted in 1929, the qualification by plaintiff after the transactions "cures" the defect in plaintiff's claim.

Both parties have filed memoranda in support of their positions.

Defendant contends that its motion to dismiss must be granted because under Tennessee law the intrastate contracts of a non-qualifying foreign corporation are absolutely void or, at the very least, are unenforceable by the offending corporation, and that a subsequent obedience to

the qualifying statute does not validate the contracts or remove the disability of the offending foreign corporation to enforce them.

On the other hand, plaintiff strongly urges upon us the view that the Tennessee statute requiring the qualification of foreign corporations is merely regulatory, that such prohibited contracts are not void, and that a subsequent obedience to the statute removes any disability of the offending corporation to enforce such contracts in Tennessee courts.

This view urged by plaintiff would appear to be the majority view in the United States under variously worded state statutes.[1]

Under the older Tennessee statutes, namely Chapter 31 of the Acts of 1877, Chapter 122 of the Acts of 1891, and Chapter 119 of the Acts of 1895, some state court opinions in Tennessee have indicated that such contracts are void. Cary-Lombard Lumber Co. v. Thomas, 92 Tenn. 587, 593, 22 S.W. 743 (1893); New Hampshire Insurance Co. v. Kennedy, 96 Tenn. 711, 36 S.W. 709 (1896); Gilmer v. United States Savings and Loan Co., 103 Tenn. 272, 52 S.W. 851 (1899) (though here the court at page 274 also uses the word "unenforceable"); Peck-Williamson Heating & Ventilating Co. v. McKnight & Merz, 140 Tenn. 563, 205 S.W. 419 (1918); State Life Ins. Co. v. Dupre, 19 Tenn.App. 301, 86 S.W.2d 894 (1935). However, as Judge Wilson pointed out in his opinion in In Re Leeds Homes, Inc., 222 F.Supp. 20, 28 (E.D. Tenn.1963), aff'd 332 F.2d 648 (6th Cir. 1964), cert. denied sub nom. Tate v. National Acceptance Co. of America, 379 U.S. 836, 85 S.Ct. 71, 13 L.Ed.2d 43 (1964), in those cases the courts had no occasion to make a distinction between void and unenforceable contracts. We

are inclined to agree with his conclusion, found at 222 F.Supp. 29, that:

"* * * the law of Tennessee is that contracts and transactions of foreign corporations acting in violation of the qualifying laws of the State are not void, but rather are unenforcible [sic] in the courts of the State at the instance of the offending corporation."

This conclusion is, in our opinion, supported by Swope v. Jordan, 107 Tenn. 166, 64 S.W. 52 (1891); Singer Mfg. Co. v. Draper and Looney, 103 Tenn. 262, 52 S.W. 879 (1899); Harris v. Columbia Water & Light Co., 108 Tenn. 245, 67 S. W. 811 (1901); Advance Lumber Co. v. Moore, 126 Tenn. 313, 148 S.W. 212 (1912); Interstate Amusement Co. v. Albert, 128 Tenn. 417, 161 S.W. 488 (1913); Cunnyngham v. Shelby, 136 Tenn. 176, 188 S.W. 1147, L.R.A.1917B, 572 (1916); Biggs v. Reliance Life Ins. Co., 137 Tenn. 598, 195 S.W. 174 (1917); and Hollingshead Co. v. Baker, 4 Tenn. App. 362 (1926).

It should be said here, parenthetically, that opinions of federal courts prior to Erie Railroad v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) are not relevant since they then applied general federal law. See, e. g., Caesar v. Capell, 83 F. 403 (C.C.W.D.Tenn.1897); Jarvis-Conklin Mtg. Trust Co. v. Willhoit, 84 F. 514 (C.C.E.D.Tenn.1897); and Eastern Bldg. & Loan Assoc. v. Bedford, 88 F. 7, 20 (C.C.W.D.Tenn. 1898).

To say, however, that generally the contracts of non-qualifying foreign corporations are not void but are only unenforceable by the offending corporation does not answer our question. The question is: does subsequent qualification by the corporation enable it to maintain suits on the contracts?

1. See Annotation entitled "Compliance after commencement of action as affecting application of statute denying access to courts or invalidating contracts where corporation fails to comply with regulatory statute," found in 6 A.L.R.3d 326, and an older but similar Annotation found in 75 A.L.R. 446. See also Annotation entitled "Effect of execution of foreign corporation's contract which, while executory, was unenforceable because of noncompliance with conditions of doing business in state," found in 7 A.L.R.2d 256.

In Lloyd Thomas Co. v. Grosvenor, 144 Tenn. 347, 233 S.W. 669 (1920), Headnote 1 on page 347 states:

"Although Acts 1877, c. 31, Acts 1891, c. 122, and Acts 1895, c. 81, concerning terms on which corporations can carry on business in the state, were passed as a matter of public policy and not for the benefit of parties sued, *before a foreign corporation can sue on a contract made and performed while it was unauthorized to do business in the state* in the courts of the state, *it must comply with the statutes* concerning transaction of business within the state by foreign corporations." [Italics added]

This headnote clearly implies that a foreign corporation may enforce its otherwise unenforceable contracts once it does qualify to do business in Tennessee. However, a careful examination of the opinion at pages 353–354, 233 S.W. 669, reveals that the court said nothing more than that generally a foreign corporation which has not complied with the qualifying statutes cannot enforce any intrastate contracts in Tennessee courts made while such corporation was unqualified.

This brings us to a consideration of Gilmer v. United States Savings & Loan Co., 103 Tenn. 272, 52 S.W. 851 (1899). There defendant made a loan and took a mortgage on Gilmer's property located in Tennessee on November 4, 1892, at a time when defendant was a non-qualifying foreign corporation. Having subsequently qualified, defendant then had Gilmer execute another mortgage on the same property, which the court found to be an attempt "to validate and make legal a contract [the original mortgage] which was then illegal and unenforceable." The court agreed with a lower appellate court which had determined the later mortgage to be void for lack of consideration, and, although defendant had subsequently qualified, had determined that the first mortgage obtained prior to qualification also to be void.

In a parallel case not involving the same statute but involving a similar principle, Wright v. Jackson Construc-

tion Co., 138 Tenn. 145, 196 S.W. 488 (1917), plaintiff, an Alabama construction company, did some railroad construction work in Tennessee, and, after the work was performed but before it brought suit on the contract to recover for money it was owed, it paid an amount of money to cover the privilege tax for doing business in Tennessee required by § 4, Chapter 479, Acts of 1909. The court held at p. 153, 196 S.W. at p. 490:

"It is not denied that complainant failed to pay the tax before he did the work. After the work was performed and before suit brought he paid the $25 tax. This was too late, even if he had paid the $100, the tax applicable to his situation, he being a citizen of Alabama with his chief office there. It was too late because payment of a privilege tax and procurement of a license after the privilege has been exercised, though before suit brought, will not give the party so paying any right to maintain suit. * * *"

To like effect, see Bush Bldg. Co. v. Mayor and Aldermen of Town of Manchester, 189 Tenn. 203, 225 S.W.2d 31 (1949).

Finally, in Cary-Lombard Lumber Co. v. Thomas, 92 Tenn. 587, 22 S.W. 743 (1893), plaintiff, a foreign corporation, furnished materials and lumber in the construction of defendant's house, for which it had not been paid. At the time it furnished the materials and lumber, it had not qualified to do business in Tennessee, although it did thereafter qualify. The Supreme Court of Tennessee denied plaintiff any relief, saying at pp. 593–594, 22 S.W. at p. 744:

"This Act of 1891, Chapter 122, has, by this Court, been held to be a valid and constitutional law. * * * After this Act went into effect, March 21, 1891, by its terms and provisions this foreign corporation was not authorized to do any business, or to own any property in Tennessee until the provisions of the act were complied with. It could, therefore, after that Act was passed, own no property and make no legal contract in Shelby County, where

this property was situated, until the abstract or memorandum was recorded in the Register's office of that county, which, as before stated, was the twenty-eighth of July, 1891. All contracts made by it and all business transacted by it in Shelby County [between these dates] were illegal, and no rights of property or of action could arise out of the same.

"It follows that such company can have no remedy growing out of any transaction between these dates in Shelby County, and can recover upon no contract, express or implied, entered into between these dates, and is not entitled to retake or recover any materials or lumber furnished within these dates. \* \* \*

\* \* \* \* \*

"In order to entitle the complainant to any relief, it must show affirmatively that it had complied with the law; until that is done, all its transactions are illegal. The burden of proof being upon it, the Court can presume nothing in its favor, and *can only hold such of its contracts enforcible* [sic] *as it shows were made after it had complied with the law* enabling it to make a valid contract, and to transact business." [Italics added]

Plaintiff's principal argument is that, whatever the result has been and should have been under the older statutes of 1877, 1891, and 1895, the present statute of 1929 requires a different result. Defendant contends that, to the contrary, there is no significant difference between the 1929 statute and the older ones. Both parties agree that there are no cases dealing with this precise question under the 1929 statute.

The 1891 statute provides (Ch. 122 of the Acts of 1891):

"That when a corporation complies with the provisions of this Act it shall then be, to all intents and purposes, a

domestic corporation, and may sue and be sued in the courts of this State, and subject to the jurisdiction of the courts of this State just as though it were created under the laws of this State."

The 1929 statute provides (T.C.A. § 48–907):

"When such foreign corporation shall have duly complied with the provisions of §§ 48–901—48–906, then it shall be entitled to all the privileges, rights, immunities, and subject to the liabilities of corporations organized and chartered under the laws of this state."

We agree with defendant that there is not, for present purposes, any significant difference between the statutes.

■ We note in passing that the rule that we are about to determine to be the present law of Tennessee has been severely criticized by Professor Gifford of Vanderbilt University in an article found in 18 V.L.R. 1069, 1077 (1965):

"47. \* \* \* It is hoped that the Tennessee courts will revise the scope of the policy of unenforceability to permit subsequent qualification to render previously contracted obligations enforceable. The contrary rule would not only place an inordinately high penalty upon what appears to be only a slight default, but it would require foreign corporations to construe correctly a vague and uncertain mass of decisions at the peril of loss of their property."

See also Justice Jackson's dissenting opinion in Woods v. Interstate Realty Co., supra, 337 U.S. at 540, 69 S.Ct. 1235, where he points out that the penalty which the non-qualifier suffers (unenforceability of its otherwise valid contracts) unjustly enriches the debtor without benefitting the State.[2] Nevertheless, it is our duty under *Erie* to follow the law as announced by the courts of this State and not to substitute therefor our concept of the law as we think it perhaps should be.

---

2. In this particular case, however, the plaintiff must have known that it should qualify since it maintained a warehouse and a resident salesman in Memphis. Deliveries were made to defendant from this warehouse.

We therefore conclude that in Tennessee intrastate contracts and transactions of foreign corporations which have failed to qualify to do business in Tennessee are unenforceable in this court at the instance of the offending corporation, and that plaintiff's subsequent compliance with the qualifying statutes as they now exist did not validate or render enforceable in this court the contract or contracts it entered into with defendant prior to August 22, 1968, the date it finally qualified to do business in Tennessee.

It is therefore ordered, adjudged, and decreed that defendant's motion to dismiss be and the same is hereby granted.