## STATE LIFE INS. CO. v. DUPRE et al.

Eastern Section.   April 13, 1935.

Petition for Certiorari denied by Supreme Court, October 12, 1935.

Cantrell, Meacham & Moon and Noone & Ziegler, all of Chattanooga, for appellants.

Finlay & Campbell, of Chattanooga, for appellee.

AILOR, J.   The complainant is a corporation having its principal office and place of business in the state of Indiana.   It filed its original bill in this cause for the purpose of setting aside a marginal release of a trust deed in the office of the register of deeds of Hamilton county, Tennessee, effected by the Chicamauga Trust Company, and to foreclose the trust deed so released of record.   It was alleged in the original bill that, on November 1, 1926, W. W. Dupre and wife executed two promissory notes for $3,000 and $500, respectively,

payable to Chicamauga Trust Company, which were secured by trust deed on certain real estate in Hamilton county; that said trust deed was duly recorded in deed book "F," Vol. 21, page 157, in the office of the register of deeds of said county; that on December 17, 1926, the Chicamauga Trust Company, for a valuable consideration, sold and transferred to complainant the note for $3,000; that said note matured November 1, 1929, and the same remains unpaid. It was further alleged that Chicamauga Trust Company, indorser on the note, had gone into bankruptcy; that since said company had gone into bankruptcy, it had learned for the first time that, on June 25, 1930, the said Chicamauga Trust Company by its title attorney, Ben W. Cavender, had executed a marginal release of said trust deed and the note so held by complainant, reciting that said Trust Company was the owner and holder of said note. It was averred that said Chicamauga Trust Company was neither the owner nor holder of said note of $3,000; that it had no right or authority, either as owner or otherwise, to execute a release of the lien of the deed of trust. It was further alleged that W. W. Dupre and wife had conveyed the real estate in question to J. T. McCollister, and he in turn had conveyed the same to I. Levine and wife, Lena B. Levine. It sought to have said release expunged from the record, and also a sale of the land in satisfaction of its note.

I. Levine and wife filed their answer setting up the defense that the Chicamauga Trust Company had, for more than twenty-five years, acted as the agent of complainant in making loans, and in collecting interest and principal on same for complainant; that the complainant, a nonresident corporation of Tennessee, had been making and procuring loans and transacting a general loan and note buying business in Chattanooga and other points in Tennessee; that it had never registered its charter or qualified itself to do business in Tennessee as required by law, and that the transaction in question was carried out in violation of law; that it had no right to maintain the suit in the courts of this state to enforce collection of its said note. It was further alleged that, for a period of twenty years, the complainant had transacted a business of not less than $1,000,000 each year, through the Chicamauga Trust Company; that the complainant and Chicamauga Trust Company had entered into a contract, whereby they became partners; and that the said Chicamauga Trust Company was fully authorized by said contract in writing to collect said note and release the lien securing the same. A copy of this contract was filed as Exhibit A to said answer, and will be noticed hereafter.

The Hamilton National Bank filed its answer. It set up similar defenses to that of defendant Levine; that complainant and Chicamauga Trust Company had, for a period of more than twenty-five years, been associated together in conducting a general loan business

in Chattanooga; that it had failed to comply with the laws of the. state so as to authorize it to do business in the state, and was thereby precluded from enforcing its contracts in the courts of the state. It was insisted that, through many years prior to 1931, scores of loans made payable to Chicamauga Trust Company had been transferred to complainant, and that the said Chicamauga Trust Company had continued to act as the agent of complainant in the collection of interest and principal of said loans, and also in the making of releases of the record liens evidencing such loans and trust deeds securing same; that complainant had permitted said Chicamauga Trust Company to act as its agent in collecting loans and in making releases for it, and by reason of that fact is now estopped to deny its authority to make the release in question; that it advanced the money to Chicamauga Trust Company for the purpose of paying off the loan sued upon in this case, and took as security for such advancement note executed by McCollister and wife; that it took the McCollister notes in good faith, relying upon the validity of the release made by Chicamauga Trust Company of the mortgage or trust deed sought to be set in this cause.

Upon the hearing of the cause, the chancellor found and held that the Chicamauga Trust Company was the duly authorized agent of complainant to collect the note in question, and, upon collection of same, was fully empowered to make a release of the lien securing same. He held, however, that the facts failed to show that payment had been made to Chicamauga Trust Company; that the bank had made an independent loan to Chicamauga Trust Company, and had not paid the note. The release was declared void, and complainant was granted the relief sought. Hamilton National Bank and I. Levine and wife perfected appeals from said decree, and have assigned errors herein.

The errors complained of will be considered from the standpoint of the several questions raised rather than separately. The first question raised is that the chancellor erred in granting the relief sought by the original bill, for the reason that Chicamauga Trust Company was fully authorized to collect the note in question and to make the release complained of; that it did collect on the note and executed a valid release of record. The pertinent facts in connection with the transaction in question are briefly as follows: On November 15, 1926, Chicamauga Trust Company wrote complainant a letter, inclosing an application for a loan in favor of W. W. Dupre in the amount of $3,500 for approval. It appears that two notes had been executed, one in the amount of $3,000 and one for $500, for the reason that complainant limited its loans to $3,000, the Chicamauga Trust Company proposing to retain the smaller note as its own. On December 2nd, complainant replied to the application, advising that it would not accept the application for more

than $3,000, but on December 6, 1926, Chicamauga Trust Company wrote a further letter to complainant, informing it that the loan had been closed for the amount of the application, with the provision that the small note would be retained by it. On December 15th, M. E. Carlisle, secretary of the complainants' loan department, wrote the Chicamauga Trust Company, advising that the executive committee had approved the application of W. W. Dupre for a loan of $3,000 on his property, and that if acceptable to the borrower, it would accept the completed papers in connection with the loan including insurance of $3,750. On April 5, 1930, complainant wrote to Chicamauga Trust Company as follows: ''Gentlemen: We again call your attention to the fact that the following loans are past due and unpaid. 13199 'W. W. & Edna Dupre $3,000.00—Nov. 1, 1929. Kindly furnish us a report in regard to these loans.''

The original agreement under which complainant and Chicamauga Trust Company operated prior to January, 1913, is not in the record. But from the letters in connection with the loan to Dupre, it is apparent that Chicamauga Trust Company was acting as loan agent for complainant in the Chattanooga area. The application for loan was made to complainant company through Chicamauga Trust Company, and while the written agreements between complainant and Chicamauga Trust Company characterize the transactions as purchases of notes, it is apparent that it was nothing more than a working arrangement, whereby complainant conducted an enterprise of loaning its money through said trust company. We think this proposition is reduced to a certainty when viewed in connection with supplemental agreement entered into between them on November 26, 1929, in which is found the following provision: ''Tenth: The Trust Company agrees to pay to the Insurance Company one-half of the net commission from each loan which may be purchased from the Trust Company, said commission so paid to the Insurance Company to be applied by it upon the loans or properties covered by this agreement as the Trust Company may designate.''

In other words, the trust company would charge borrowers a commission for procuring a loan, and the complainant insisted upon being paid one-half of the net commission so collected. Whether it intended it or not, complainant was employing the trust company to make loans for it; was charging a commission for making such loans, and using the trust company as agent to collect from borrowers such commission for its use and benefit. It insisted upon the trust company acting as its agent in foreclosing mortgages, looking after its property, but agreed to share the net profit equally with the trust company. Complainant had no other agency than the trust company to look after its business in the Chattanooga area, which reached an annual volume of around $1,000,000. The chancellor found that the trust company was the agent of complainant, and with this conclu-

sion we concur, with the further provision that we think it was fully constituted as a general agent of complainant in its territory. We think that it was not only fully empowered to receive payment of the note in question, but that it was fully empowered to release the lien securing the same. Authority to collect the note carries with it authority to make a release of the lien securing same, since complainant maintained no other agency for that purpose.

On December 1, 1930, the Chicamauga Trust Company pledged the McCollister notes to the Hamilton National Bank for a loan of $3,500, the original application of which was made on March 27, 1930, when the lien of complainant was the only encumbrance upon the property. It was the understanding as insisted upon by the bank that the loan was made with the agreement that it would be used to free the land of encumbrance. Defendant Levine and wife took title to the property after June 25, 1930, after the release in question had been made by the title attorney of the trust company. They were given a title guarantee showing the property unencumbered. Can complainant now repudiate the authority of its agent, nullify the release made by it, and acted upon by defendant Levine, for the reason that its agent did not account to it for the money collected? It is true that the defendant Levine did not pay the amount of the note to the trust company, and it is true that the bank did not pay the amount of the note to it with specific instructions that it should be applied to the cancellation of the note, though it was the intention of the agent of complainant that the series of transactions would operate to extinguish the obligation, and operate as a cancellation of the note. We think the fact that the trust company was authorized to collect the note, and a fortiori, to make the release complained of operated to bind the complainant so far as defendant Levine and wife are concerned. If any one is to suffer by reason of the wrongful act of the agent of the complainant, it seems that in equity and good conscience complainant should bear the loss.

As above set out, the loan to W. W. Dupre was made by complainant through its agent, Chicamauga Trust Company. It is true that it was taken in the name of Chicamauga Trust Company, through which company the application for loan was made; but this was a formality so far as the note for $3,000 was concerned. The letters written during the negotiations for the loan show that complainant treated it as a loan, and not as a purchase of the note, even though it required the indorsement of the trust company. This was only an added precaution taken by its against questionable loans. And after the loan was made, complainant repeatedly urged said trust company to collect the loan. And when the note was long overdue, it did not take up with the makers the question of payment, but continued to deal through its agent to collect. We think that this transaction, under all of the circumstances surround-

ing same, demonstrates that complainant was doing business within the state of Tennessee. Under the arrangement it had with its agent, it was making loans on real estate situated in the state, upon applications made to its agent in Chattanooga, and it was charging a commission for the making of such loans. This being true, it was necessary for said corporation to qualify for the transaction of business within the state. Our state Supreme Court has defined doing business within the state in this connection as follows: "A foreign corporation is doing business in this state, within the meaning of these statutes, 'when it transacts therein some substantial part of its ordinary business, continuous in character as distinguished from merely casual or occasional transactions.'" Bouldin v. Taylor, 152 Tenn., 97, 138, 275 S. W., 340, 351, citing Interstate Amusement Co. v. Albert, 128 Tenn., 417, 161 S. W., 488.

Complainant had been engaged in doing business similar in character to the transaction detailed in this suit at least since 1913. And it constituted a substantial part of its ordinary business of loaning money. It not only loaned money, but charged and collected from borrowers of this state commissions on loans made by it. It was the duty of the complainant to comply with the provisions of chapter 122 of the Acts of 1891, as amended by Acts of 1895, chapter 81, providing for the filing of copy of its charter with the secretary of state, registering abstract of same in the office of the county in which it proposed to do business, etc. This it failed to do, and it is subject to the consequences.

"Where a foreign corporation has not complied with the statutes and secured a license to do business in Tennessee it can not recover upon a contract for goods sold in this State." Hollingshead Co. v. Baker, 4 Tenn. App., 362.

"A contract by a foreign corporation illegally doing business in the state is void on the ground of public policy, and is incapable of ratification or estoppel by the conduct of the other party." Peck-Williamson, etc., Co. v. McKnight & Mertz, 140 Tenn., 563, 205 S. W., 419.

The chancellor found that complainant had constituted the Chicamauga Trust Company its agent to carry on its business in the state, but he refused to give effect to the natural consequence of this holding. We think that it is not entitled to the relief sought, first, because its agent executed a release of the trust deed within the scope of its authority, and, second, because complainant had been engaged in the transaction of business within the state without complying with statutory requirements authorizing foreign corporations to do business in the state. And for these reasons, the decree of the chancellor is reversed and complainant's bill is dismissed.

Portrum and McAmis, JJ., concur.