# GENTRY v. DUGGER.—190 S. W. (2d) 316.

Eastern Section.   June 28, 1945.

Petition for Certiorari denied by Supreme Court, October 6, 1945.

Frazier & Roberts, of Chattanooga, for appellant.

Wilkes T. Thrasher and L. D. Farrar, both of Chattanooga, for appellee.

BURNETT, J. This case presents the perplexing problem of where the loss shall fall among two innocent persons, the owner of an unindorsed real estate note and the purchaser of the note from a defaulting broker who was trusted with the note for collection. Briefly, the following facts are shown by the record:

After the completion of the proof herein the named appellee (complainant below) died. The action is properly revived in the name of Frankie D. Thrasher, administratrix of her estate. Mrs. Dugger was the owner of several pieces of real estate which she placed with one Walter Chamberlain for sale. These properties were sold through his office. In the sale of one of the properties a mortgage note of $1,961.40 payable monthly was taken. This note, without being indorsed by her, was left with Chamberlain for collection. Chamberlain also had in his possession the trust deed, title insurance policy and two fire insurance policies on the property. A few of the installments were paid to Chamberlain by the maker of the note and these were sent to Mrs. Dugger.

The appellant (defendant below) is a retired physician being retired because of blindness. He apparently had accumulated some money and lived on the income derived thereon by investing his money in mortgage notes. Over a period of years he had purchased several notes from and through Chamberlain. Chamberlain sold the note in question to the appellant. He told the appellant that the present note was indorsed—was very careful to read him its contents and related in detail the various papers he had with him. The appellant in company with his wife inspected the property which was given as security for the note. The appellant made no inquiry of Mrs. Dugger as to whether or not Chamberlain had it for sale. He did not show the note to his wife or anyone to determine whether or not it had been indorsed—he took Chamberlain's word for this.

After the purchase the appellant took the note and related papers and put them in his safe deposit box with a braille notation thereon. He allowed Chamberlain to continue the installment collections. These collections

were made without cost and the installments remitted to both the appellee and appellant by Chamberlain. This fraudulent duplicity came to light when Chamberlain went into bankruptcy. Prior to this Chamberlain bore an excellent reputation. There was nothing in his past to cause doubt or suspicion. The appellant from past experience and reputation, trusted him implicity.

It is very earnestly and plausibly argued that Mrs. Dugger having allowed Chamberlain to sell her properties and having left with him this note and accompanying papers also clothed Chamberlain with apparent authority to make a binding sale of this note. The record fails to show wherein she had theretofore allowed him to sell her notes or other evidences of debt. The note in question was not indorsed—this certainly should put a purchaser on notice and require of him some ordinary inquiry as to the right to sell. The bare possession of instruments securing or evidencing indebtedness tends to show the existence of authority to sell or receive payment of such indebtedness but does not, as a matter of law, establish it, except in situations of commercial paper negotiable by delivery or where by previous acts of the owner the owner could be estopped to deny such authority. See 3 C. J. S., Agency, sec. 280, page 217.

"In the absence of the application of statute or conduct creating an estoppel, a principal may ordinarily recover his property, or its value, where it has been wrongfully transferred to a third person." 3 C. J. S., Agency, sec. 277, subsec. a, page 214.

This general rule as to personalty is applicable to unindorsed negotiable paper.

The maxim, "where one of two persons must suffer loss, he should suffer whose act, or neglect, occasioned the loss," presupposes that the principal must

have clothed the agent with all indicia of authority to sell. Where one of the main indicias of authority is shown in lack of endorsement a red light is shown before the purchaser which should require inquiry as to the agent's authority.

The infirmity of the appellant is deeply regretted. This infirmity though makes it all the more necessary that he should not have trusted Chamberlain unless he expects to abide by this trust. The principal cannot be bound solely by the acts and conduct of the agent but those acts and conduct or knowledge thereof brought home to the principal and then his failure to act thereon would bind the principal.

''The apparent authority of the agent is the same, and is based upon the same elements as the authority created by the estoppel of the principal to deny the agent's authority; that is to say, the two are correlative, inasmuch as the principal is estopped to deny the authority of the agent because he has permitted the appearance of authority in the agent, thereby justifying the third party in relying upon the same as though it were the authority actually conferred upon the agent.'' 2 Am. Jur., section 104, page 86.

Subject to the exception of apparent authority or estoppel the learned authors of Restatement of the Law, Agency, section 177, state the rule to be: ·

''A disclosed or partially disclosed principal who entrusts an agent with the possession of a negotiable instrument not payable to bearer or endorsed to the agent is and thereby subject to the loss of his interests therein by the collection of the claim or the transfer of the document by the agent.''

It is insisted that indorsement of this note was not necessary. Code, sections 7373, 7368 and 7393, are cited

and relied on in support of this insistence. These Code sections raise no presumption of ownership when it is not indorsed by the payee. This question was very fully and ably gone into in the case of Allen v. Hays, 139 Tenn. 56, 201 S. W. 135. In this case (Allen v. Hays, supra) Code, section 7373, was the only section involved, but we feel that the discussion and authorities therein cited amply cover the other two sections above mentioned. .

We have very carefully studied the cases cited in support of the assignments herein. All of these cases are clearly distinguishable from the case at bar.

In Walker v. Shipwith, 19 Tenn. 502, 33 Am. Dec. 161, it was decided that the agent was held out by the principal to have apparent authority to receive and ship the goods and that even though the agent acted contrary to the directions of the principal, the principal was liable.

In Shurer v. Green, 43 Tenn. 419, it was held even if the agent had authority to receive payment of the notes he had no authority to receive unlawful currency therefor.

In Griswold Hallette & Persons v. Davis, 125 Tenn. 223, 141 S. W. 205, it was held that the agent having possession of the notes was entitled to receive payment in accordance with the terms of the note. It does not involve the sale of an unindorsed note.

In Newland v. Oakley, 14 Tenn. 489, the agent was given a general power of attorney in writing, under which it was held he bound his principal by his act.

The cases of Conaway v. New York Life Insurance Co., 171 Tenn. 290, 102 S. W. (2d) 66, and State Life Insurance Co., 171 Tenn. 290, 102 S. W. (2d) 66, and State Life Insurance Co. v. Dupre, 19 Tenn. App. 301, 86 S. W. (2d) 894, involve related questions. In these cases foreign insurance companies apparently clothed local agents with authority to make collections and release their liens se-

curing their notes. By their various acts in making these releases and collections which were approved by their principal they became estopped to deny this authority when their agent made collections and releases and then defaulted.

For reasons herein set forth the assignments of error must be overruled and the decree of the Chancellor affirmed. Costs will be taxed against the appellant and his sureties.